792 So.2d 617 (2001)
AZTEC MEDICAL SERVICES, INC., f/k/a Urology Care, Inc., Appellant,
v.
Robert BURGER, M.D., Jerry H. Singer, M.D., Ross A. Cohen, M.D., and Urologic Specialists, P.A., Appellees.
No. 4D01-421.
District Court of Appeal of Florida, Fourth District.
August 22, 2001.
*618 Edith G. Osman and K. Renee Schimkat of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Miami, for appellant.
Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, L.L.P., West Palm Beach, for appellees.
HAZOURI, J.
Aztec Medical Services, Inc., f/k/a Urology Care, Inc. (Aztec) appeals from the trial court's non-final order denying its motion to compel arbitration of Robert Burger, M.D., Jeffrey H. Singer, M.D., Ross A. Cohen, M.D. and Urologic Specialists, P.A.'s claims alleging violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). We reverse.
Aztec is a medical management company engaged in the business of reviewing medical claims submitted by physicians and paying those physicians for medical services performed pursuant to applicable contractual and medical guidelines. Robert Burger, M.D., Jeffrey H. Singer, M.D., Ross A. Cohen, M.D. (collectively, the Physicians) are physicians with a practice specializing in urology and are principals of plaintiff Urologic Specialists, P.A. (Urologic Specialists). Aztec and United Healthcare of Florida, Inc. (United Healthcare) reviewed medical claims submitted by the Physicians when they were members of United Healthcare's Florida healthcare network, pursuant to a Specialty Physician Managed Care Agreement (Physician Agreement) entered into between Aztec and the Physicians and a Medical Group Participation Agreement (Participation Agreement), a related agreement entered into between United Healthcare and the Physicians and Urologic Specialists.
Attached to both the Participation Agreement and the Physician Agreement is a Corporation Provider Participation Addendum (Addendum) entered into between the Physicians, United Healthcare and Aztec. The Addendum, coupled with the Physician Agreement and the Participation Agreement, set forth the terms and conditions under which the Physicians shall render healthcare services to individuals covered under the United Healthcare benefit contract and how the Physicians would be compensated for such services.
By complaint dated March 6, 2000, the Physicians and Urologic Specialists (collectively, Appellees) brought the underlying action against Aztec, United Healthcare, *619 Gary L. Schultz, and Jonathan B. Gavras, M.D.[1] Of the six counts initially alleged in the complaint, only two were directed against Aztec. Count I, alleging breach of contract, claims that Aztec down-coded bills submitted by plaintiffs; unilaterally underpaid plaintiffs for their services; and ignored or denied claims submitted for payment, in purported violation of the Physician Agreement. Count V alleges violations of the FDUTPA. Though couched as a statutory violation, the allegations in Count V are identical to those supporting plaintiffs' breach of contract claim-namely, that Aztec purportedly failed to pay claims timely and down-coded bills submitted by the Physicians.
Aztec moved to dismiss both counts of the complaint alleged against it. In that motion, Aztec invoked the parties' contractual arbitration provision and sought to compel arbitration of plaintiffs' breach of contract claim and statutory FDUTPA claim. Similarly, United Healthcare sought to dismiss the litigation against it and also sought to compel arbitration.
The arbitration provision is set forth in the Participation Agreement and provides:
Plan or Payer and Medical Group will work together in good faith to resolve any dispute about their business relationship. If the parties are unable to resolve the dispute within 30 days following the date one party sent written notice of the dispute to the other party, the dispute is not resolved, and if any party wishes to pursue the dispute, it shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association. In no event may arbitration be initiated more than one year following the sending of written notice of the dispute. Any arbitration proceeding under this Agreement shall be conducted in Dade County, Florida.
(Emphasis added).
The Addendum incorporated into the Physician Agreement the arbitration provision set forth in the Participation Agreement and specifically provides that: "This Agreement contains a binding arbitration provision that may be enforced by the parties."
The trial court heard United Healthcare's motion first and by order dated June 19, 2000, granted that part of United Healthcare's motion seeking dismissal of the breach of contract claim asserted against it on the ground that plaintiffs were contractually bound to submit that claim to binding arbitration.[2]
Pursuant to the parties' contractual arbitration provision, the plaintiffs thereafter filed Demands for Arbitration, dated August 22, 2000, asserting their breach of contract claims against both United Healthcare and Aztec. The trial court then scheduled Aztec's Motion to Dismiss to be heard on December 8, 2000.[3] Thereafter, in its order of January 2, 2001, the trial court dismissed the breach of contract claim alleged against Aztec, as it was already pending in the arbitration proceeding *620 initiated by the plaintiffs, but denied Aztec's motion to dismiss the FDUTPA claim, specifically denying enforcement of the arbitration provision to that statutory count. In the order denying enforcement of the arbitration provision, the trial court stated:
3. The Court also extrapolates from the Management Computer Controls, Inc.[4] case that the broad language of the arbitration provision, purportedly covering "any dispute about [the parties'] business relationship" does not cover a statutory claim for unfair trade practices. An unfair trade practices claim is unique and not simply a part of the contract.
(Emphasis added).
Aztec argues that the trial court ignored state and national policy in favor of enforcing contractual arbitration and also ignored Florida case law holding that claims under the FDUTPA are subject to arbitration. We agree.
In Value Car Sales, Inc. v. Bouton, 608 So.2d 860 (Fla. 5th DCA 1992), there was an agreement between a car seller and a purchaser which contained an arbitration clause. The purchaser filed claims for inter alia breach of contract and unfair trade practices under the FDUTPA. The trial court denied the seller's motion to enforce arbitration "finding that while there was no issue but that the purchaser had signed the contract containing the arbitration provision, the arbitration provision unlawfully restricted the purchaser's access to the courts and lacked mutuality of obligation...." Id. at 861. The district court reversed and held:
Section 682.02, Florida Statutes, provides that parties may agree in a written contract to settle by arbitration any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole, or any part thereof. Such arbitration agreements do not deny access to the courts because the parties agreeing to arbitration have waived that right by agreeing to arbitration in lieu of litigation... We find no Florida cases specifically holding that claims under the Florida Deceptive and Unfair Trade Practices Act (§ 501.201, et seq., Fla. Stat.) are not subject to arbitration. The First District Court of Appeal in Physicians Weight Loss Centers v. Payne, 461 So.2d 977 (Fla. 1st DCA 1984), implied that claims under the Florida Deceptive and Unfair Trade Practices Act are subject to arbitration. But see contrary dicta from the Third District in Consolidated Labor Union Trust v. Clark, 498 So.2d 547 (Fla. 3d DCA 1986)(considering beneficiary's right to attorney's fees under Employee Retirement Income Security Act).
Id. In Payne, there was a claim that the contract containing the arbitration clause was obtained by fraud and the case was remanded for a factual determination of whether the contract was fraudulently induced. The decision implied that if there was no fraud, then the FDUTPA claim was arbitrable.
In Clark, the court discussed the decision in Cuevas v. Potamkin Dodge, 455 So.2d 398 (Fla. 3d DCA 1984), in which the court interpreted section 501.2105(1)-(3), Florida Statutes (1981), of the FDUPTA which provided:
In any civil litigation ... the prevailing party, after judgment in the trial court and exhaustion of all appeals, if *621 any, shall receive his reasonable attorney's fees and costs ... [The award shall be made by] the trial judge who presided over the civil case.
Clark, 498 So.2d at 549 (emphasis added). The court said "the very language of the Act considered in Cuevas excludes the notion of arbitration." Clark, 498 So.2d at 550. We agree with the fifth district in Bouton that this is dicta and not controlling on the issue of whether a claim pursuant to the FDUTPA is subject to arbitration.
In Sharpe v. Lytal & Reiter, Clark, Sharpe, Roca, Fountain, Williams, 702 So.2d 622 (Fla. 4th DCA 1997), this court considered whether the court had exclusive jurisdiction over a partnership dissolution under section 620.715(1), Florida Statutes, which provides that "[t]he court shall adjudge a dissolution ... [o]n application by or for a partner...." There is nothing else in the Florida Partnership Act which grants exclusive jurisdiction to the courts and excludes arbitration. This court held:
In order to find a legislative intent to preclude the submission of a class of claims to arbitration, we held that the legislature would have to state such a requirement in unambiguous text.
* * *
Here the FPA merely hints that a judge is required for dissolution claims, while the FAC [Florida Arbitration Code] explicitly states that the court should enforce agreements to arbitrate properly made under the FAC. Because the FPA provision lacks specific text granting the courts exclusive jurisdiction over partnership dissolution claims, we conclude that the words "[t]he court shall adjudge a dissolution" were not intended by the legislature to disable other forms of dispute resolutionsuch as arbitrationfrom resolving dissolution claims by partners. Rather, harmonizing the FPA provision with the FAC, we conclude that the FPA provision was intended to create a judicial duty to decree dissolution only when the powers of the judge have been validly implicated and not, as here, disclaimed by a prior agreement to arbitrate.
We also point out that as a practical matter the arbitration process will offer the opportunity for judicial involvement in the partnership dissolution. FAC section 682.12 provides for confirmation of an arbitration award, and section 682.15 provides for the entry of judgment on a confirmed award. After a confirmed award has been thus reduced to judgment, that judgment may then be enforced in the same manner as any other judgment of a court in Florida.
702 So.2d at 624 (footnotes omitted) (citations omitted). The above stated holding in Sharpe is equally applicable to the FDUTPA.
As mentioned above, the trial court in the instant case extrapolated from the first district's decision in Management Computer Controls, Inc. v. Charles Perry Construction, Inc., 743 So.2d 627 (Fla. 1st DCA 1999), that a statutory unfair trade practices claim is not covered by an arbitration provision. In that case, Management sold computer software to Perry under two contracts. The purchase contracts both incorporated a provision entitled "Governing Law" under which all actions "arising out of this Agreement" were to be filed in Tennessee. Perry became dissatisfied with the software and filed suit against Management in Florida asserting claims for breach of contract, negligent misrepresentation, breach of implied warranty of fitness and a violation of Florida's unfair trade practices statute. Management filed a motion to dismiss for improper venue under the contract provision. *622 The motion was denied and Management appealed. The district court held that the venue clause applied to each sales contract and therefore, the breach of contract claim, the negligent misrepresentation claim and the breach of implied warranty claim should be dismissed, because they arose out of the contract as the venue provision states. However, the court then held:
The unfair trade claim is an independent statutory claim that is severable from all the remaining claims. It does not arise out of the contract, nor does it exist solely for the benefit of the parties to the contract. Our conclusion that the unfair trade practices claim is beyond the scope of the venue clause is supported by the analogous decision of the Third District Court of Appeal in First Pacific Corp. v. Sociedade de Empreendimentos e Construcoes, Ltda., 566 So.2d 3 (Fla. 3d DCA 1990). There, the court held that an action based on violations of the RICO statute, the Florida Civil Remedies for Criminal Practices Act, and the Florida Communications Fraud Act was not subject to a contract clause establishing venue in a foreign jurisdiction. The court reasoned that the enforcement of the venue clause would undermine the purposes of these statutes. Although the Unfair and Deceptive Trade Practices Act seeks to protect Florida citizens from a different kind of evil, the point relating to the applicability of the forum selection clause is the same. The use of the venue clause as a defense to the statutory claim in this case would undermine the effectiveness of the statute.
Id. at 632.
It does not logically follow that the mere fact that the FDUTPA creates a statutory claim that such a claim is not subject to arbitration. Arbitration clauses have repeatedly been held to apply to statutory claims. See, e.g., Great Western Fin. Sec., Corp. v. Grandison, 701 So.2d 1202 (Fla. 5th DCA 1997)(reversing the trial court's order denying appellants' motion to compel arbitration of statutory civil theft claim); Ronbeck Constr. Co. v. Savanna Club Corp., 592 So.2d 344 (Fla. 4th DCA 1992)(same); Beaver Coaches, Inc. v. Revels Nationwide R.V. Sales, Inc., 543 So.2d 359 (Fla. 1st DCA 1989)(enforcing arbitration provision to statutory claims under Florida's Franchise Fraud Act); Richardson Greenshields Sec., Inc. v. McFadden, 509 So.2d 1212 (Fla. 2d DCA 1987)(enforcing arbitration provision to statutory claims alleging violations of Florida's wiretap statute); Oppenheimer & Co. v. Young, 475 So.2d 221 (Fla.1985)(enforcing arbitration provision to claims under the Florida Securities Act). The trial court's "extrapolation" of Management is erroneous. See also World Vacation Travel, S.A., de C.V. v. Brooker, 26 Fla. L. Weekly D1477, ___ So.2d ___, 2001 WL 649769 (Fla. 3d DCA June 13, 2001) (distinguishing Management and finding that a venue clause in a contract designating Cancun, Mexico as the applicable forum does apply to an unfair trade claim because the claim arose solely out of the agreement).
Appellees argue that even if a statutory claim for deceptive and unfair trade practices can be arbitrated, the language of the arbitration provision contained in the contract never envisioned arbitration of such a claim. Without specific and unequivocal language including such a claim, the arbitration provision in this case may not be read so broadly as to include a claim not envisioned by the parties at the time they entered into the contract. So arguing, appellees rely heavily on Boone v. Etkin, 771 So.2d 559 (Fla. 4th DCA 2000). Appellees' reliance is misplaced.
*623 In Boone, Susan Boone sued her employer, H.J.J. Inc. d/b/a ME Productions (the Company), and its owner and chief executive officer, for sexual harassment, alleging claims for invasion of privacy, battery, negligence and, after amendment, violation of the Florida Civil Rights Act. Id. at 560. Noticeably absent from the complaint was any claim for breach of her employment agreement with the Company.
The Company moved to compel arbitration based on the arbitration provision contained in Boone's employment agreement. That arbitration provision was narrow in scope and was expressly limited to "disputes, claims and questions regarding the rights and obligations of the parties under the terms of this agreement ..." Id. After construing that narrow arbitration provision to the facts alleged, this Court held that the tort claims did not relate to the terms of employment and were, therefore, not subject to arbitration. Id. at 562-63.
The narrow arbitration provision at issue in Boone, and the facts alleged in that case, render that decision inapposite to the case at bar. First, in Boone, both the arbitration clause and the employment agreement as a whole were limited in scope. The clause itself limited its application to only those "rights and obligations under the terms of [the] agreement," id., thus narrowly defining the scope of arbitrability and clearly intending to encompass only contractual employment disputes within the scope of arbitration. Moreover, with respect to the agreement as a whole, the employment agreement, while containing provisions relating to the duties and obligations of the parties in regard to their employer-employee relationship, did not address sexual harassment or other tort claims arising out of that relationship. Id. at 561-62.[5]
Second, the allegations raised by Boone did not assert that the Company's duties or obligations "arose from or were governed by the contract." Id. at 562. As such, the "mere existence" of a contract was not sufficient to compel that the dispute be arbitrated. Id. (citing Seifert v. U.S. Home Corp., 750 So.2d 633, 642 (Fla. 1999)).
Here, contrary to the scope of the arbitration provision and the allegations asserted in Boone, the arbitration clause clearly applies to appellees' claim for violations of the FDUPTA. First, the factual allegations set forth in appellees' statutory claim are plainly governed by the terms of the parties' agreementand hence, the "contractual nexus" is satisfied. In fact, a review and analysis of the agreement is necessary to determine whether or not the claims were paid timely and whether Aztec improperly coded the claims submitted the factual allegations at the core of the unfair trade practices claim.
Second, by the plain language of the provision, it applies to "any dispute about [the parties'] business relationship." Thus, the provision does not limit itself to only those claims regarding the rights and obligations of the parties "under the terms of the agreement." Boone, 771 So.2d at 560. Instead, it clearly encompasses any dispute relating to their business relationship.[6]See also Prestige Protective Corp. *624 v. Burns Int'l Sec. Servs. Corp., 776 So.2d 311, 315-316 (Fla. 4th DCA 2001) (compelling arbitration pursuant to the parties' contract and distinguishing cases where arbitration clauses are "very specific as to what types of disputes were arbitrable").
While appellees try to draw distinctions between their statutory and contractual claims, the allegations in the complaint are too related for appellees' efforts to prevail. In fact, the factual allegations asserted by appellees to claim violations of the FDUPTA are identical to those allegations supporting their breach of contract claim.
Similarly, appellees' attempt to limit the provision by arguing that the provision itself envisions only "specific aspects of the parties contracted relationship." Their argument fails. The arbitration provision provides that "[i]f the dispute pertains to a matter which is generally administered by certain plan procedures such as a credentialing or quality improvement plan, the procedure set forth in that plan must be fully exhausted by Medical Group before Medical Group may invoke his or her right to arbitration under this section." Appellees argue that this portion of the provision somehow limits the arbitration provision's applicability.
Contrary to this argument, the cited portion of the arbitration provision sets forth the procedure for the parties to follow where one party is bringing a claim pertaining to a matter which is "generally administered by certain plan procedures." Namely, the party must fully exhaust its procedures before invoking its right to arbitration. The cited language simply does not limit the provision's scope nor dilute the initial language providing for its application to "any dispute about [the parties'] business relationship."
This is not a case, as in Boone, where statutory claims are brought and by the "mere coincidence" of a contractual agreement between the parties, one party seeks to invoke the arbitration provision. See Boone, 771 So.2d at 561 (quoting Seifert, 750 So.2d at 638). Instead, this is a case where (1) appellees pled identical allegations to support both their breach of contract and statutory claims and (2) reliance on the agreement and its terms is necessary to determine whether or not the claims submitted by the physicians to Aztec were paid timely and whether Aztec improperly coded the claims submitted the factual allegations at the core of the Unfair Trade Practices Act claim.
Accordingly, the plain language of the arbitration provision and the factual allegations underlying appellees' statutory claim mandate that appellees be required to litigate their FDUPTA claim in the pending arbitration proceeding. We reverse the order denying the motion to compel arbitration of the FDUPTA claim and remand.
GUNTHER and FARMER, JJ., concur.
NOTES
[1] By order dated September 28, 2000, United Healthcare and the two individual defendants were dismissed from the underlying action.
[2] The trial court also dismissed the Unfair Trade Practices Act claim alleged against United Healthcare because, as plaintiffs' conceded, United Healthcare is exempt from the Act.
[3] After the trial court's order of June 19 dismissing the breach of contract claim alleged against United Healthcare, plaintiffs agreed to submit the breach of contract claim alleged against Aztec to arbitration. Plaintiffs, therefore, filed their Demands for Arbitration with the American Arbitration Association before Aztec's Motion to Dismiss was heard by the trial court.
[4] Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc., 743 So.2d 627 (Fla. 1st DCA 1999).
[5] The agreement included such matters as the Company's responsibilities in terms of employment, compensation, employee benefits, confidentiality and sales territory. It also included a covenant not to compete. Id. at 561-562.
[6] The instant case is more akin to Bachus & Stratton v. Mann, 639 So.2d 35 (Fla. 4th DCA 1994), where this court found that the tort claims alleged were subject to arbitration in accordance with the parties' contractual arbitration clause. As this court noted in Boone, the "dispositive factor [in Bachus & Stratton], in light of the arbitration provision, was the connection between the cause of action and the contract containing the provision." 771 So.2d at 562.