927 So.2d 252 (2006)
Frances L. BLAND, by and through her Daughter and Next Friend, Sharon COKER, Appellant,
v.
HEALTH CARE AND RETIREMENT CORPORATION OF AMERICA, d/b/a Heartland of Zephyrhills, Appellee.
No. 2D05-3107.
District Court of Appeal of Florida, Second District.
May 10, 2006.
*254 Valeria Hendricks and Thomas S. Harmon of Davis & Harmon, P.A., Tampa, for Appellant.
John R. Blue, Sylvia H. Walbolt, Matthew J. Conigliaro, and Henry G. Gyden of Carlton Fields, P.A., Tampa, for Appellee.
LaROSE, Judge.
Frances Bland seeks review of a nonfinal order granting Health Care and Retirement Corporation of America's (HCR's) motion to dismiss and to compel arbitration. We have jurisdiction. Fla. R.App. P. 9.130(a)(3)(C)(iv). We affirm the trial court's order.
Mrs. Bland was admitted to Heartland of Zephyrhills, an HCR nursing home, in October 2002. As is increasingly unfortunate in an area with an aging population, Sharon Coker, Mrs. Bland's daughter, admitted her to Heartland because she could no longer care for her mother in her home. Four days after Mrs. Bland's admission, Ms. Coker signed a number of documents, including an arbitration and limitation of liability agreement (the Agreement) on her mother's behalf.[1] The Agreement was worded clearly, conspicuous and separate from other documents Ms. Coker signed. Subsequently, Ms. Coker sued HCR in circuit court, seeking damages and other relief on her mother's behalf for HCR's alleged violation of the Nursing Home Residents' Rights Act. §§ 400.022, .023, Fla. Stat. (2001). HCR moved to dismiss the lawsuit and to compel arbitration.
The Agreement provides, in part, as follows:
A. ARBITRATION PROVISIONS

1.1 Any and all claims or controversies between the Facility and the Resident arising out of or in any way relating to the Resident's stay at the Facility, including disputes regarding interpretation of this Agreement, whether arising out of State or Federal law, and whether based upon statutory duties, breach of contract, tort theories or other legal theories (including, without limitation, any claim based on Florida Statutes §§ 400.022, 400.023, 400.428, 400.429. . .), shall be submitted to final and binding arbitration. Except as expressly set forth herein, the provisions of the Florida Arbitration Code, Florida Statu[t]es §§ 682.01, et. seq., shall govern the arbitration. Each party hereby waives its right to file a court action for any matter covered by this Agreement.
* * *
B. LIMITATION OF LIABILITY PROVISION: Read Carefully Before Signing.

1.1 The parties to this Agreement understand that the purpose of this *255 "Limitation of Liability Provision" is to limit, in advance, each party's liability in relation to this Agreement.
1.2 Liability for any claim brought by a party to this Agreement against the other party, . . . including, without limitation, claims for medical negligence or violation(s) of Florida Statutes §§ 400.022, et. seq., arising from simple or gross negligence, shall be limited as follows:
1. Net economic damages shall be awardable, including, but not limited to, past and future medical expenses, off-set by any collateral source payments; any outstanding liens shall be satisfied from the damages awarded.
2. Non-economic damages shall be limited to a maximum of $250,000.
3. Interest on unpaid nursing home charges shall not be awarded.
4. Punitive damages shall not be awarded.
Other provisions of the Agreement limit discovery. HCR is obligated to pay all of the arbitrator's fees and costs. Under the Agreement, the parties also waived any right to recover attorneys' fees or costs. Any arbitration between the parties would occur in Pasco County before a single arbitrator who must be a retired judge or a ten-year member of The Florida Bar. The Agreement obligates the arbitrator to apply the Florida evidence and civil procedure rules. Moreover, the Agreement specifically provides that any arbitration award must be consistent with Florida law. The Agreement states that the arbitrator's award will be final and binding without any appeal except as provided by Florida law. See § 682.13(1)(a)-(e), Fla. Stat. (2001); Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327, 1328-29 (Fla. 1989). Mrs. Bland had a three-day revocation period in which to cancel the Agreement. Neither she nor Ms. Coker exercised that right.
The remedies available to Mrs. Bland, should she prevail in any arbitration against HCR, are fewer than those to which she would be entitled in a circuit court lawsuit under the Nursing Home Residents' Rights Act. For example, punitive damages are available as a possible remedy under the statute. §§ 400.0237(2),.0238. Attorneys' fees are available in limited circumstances. §§ 400.023(1), .0238(2). The statute does not cap noneconomic damages. § 400.023-.0238.
In the trial court, Mrs. Bland argued that the Agreement was procedurally and substantively unconscionable. On appeal, she contends that the remedial limitations violate public policy. We hold that the trial court properly determined that the Agreement was not unconscionable. As for Mrs. Bland's public policy argument, we conclude that the arbitrator may address the validity and enforceability of the Agreement's remedial limitations.
In assessing the enforceability of an arbitration agreement, we consider (1) whether there is a valid written agreement to arbitrate, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration was waived. Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). The validity of the arbitration agreement is the sole issue before us.
The trial court properly rejected Mrs. Bland's argument that the Agreement was procedurally and substantively unconscionable. On this point, we review the trial court's factual findings under a competent, substantial evidence standard and its application of the law to the facts de novo. Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 284 (Fla. 1st DCA 2003).
*256 To succeed on an unconscionability claim, Mrs. Bland must demonstrate both procedural and substantive unconscionability. Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 264-65 (Fla. 2d DCA 2004); Belcher v. Kier, 558 So.2d 1039, 1040 (Fla. 2d DCA 1990); see also Weston, 857 So.2d at 284. Procedural unconscionability relates to the manner in which a contract is made and involves consideration of issues such as the bargaining power of the parties and their ability to know and understand the disputed contract terms. Petsch, 872 So.2d at 265; Weston, 857 So.2d at 284. Substantive unconscionability, on the other hand, requires an assessment of whether the contract terms are "so `outrageously unfair' as to `shock the judicial conscience.'" Weston, 857 So.2d at 285. A substantively unconscionable contract is one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." Kier, 558 So.2d at 1044 (quoting Hume v. United States, 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889)).
In her trial court affidavit, Ms. Coker stated that she signed the Agreement, together with several other documents, at Heartland four days after her mother's admission. The Agreement was a separate document and there is no suggestion that HCR hid its terms from Ms. Coker. See Powertel, Inc. v. Bexley, 743 So.2d 570, 574 (Fla. 1st DCA 1999). Nonetheless, she claimed that no one explained what she was signing or what would happen if she refused to sign. Ms. Coker, who had a limited formal education, claimed that she did not know what arbitration meant.
Karen Walsh, Heartland's admissions director, testified through deposition that she spent approximately two hours with Ms. Coker on the day Ms. Coker signed the Agreement and other documents. Ms. Coker had ample opportunity that day to review and ask questions about any of the documents. Ms. Coker was not rushed or forced to sign the Agreement. Furthermore, Mrs. Bland's continued stay at Heartland was not conditioned on Ms. Coker signing the Agreement. Ms. Walsh's customary practice was to advise residents or those acting on their behalf that they could choose whether or not to sign the Agreement. Refusal to sign would not have led to Mrs. Bland's expulsion from Heartland.
Nothing in the record indicates that Ms. Coker questioned any provision of the Agreement while meeting with Ms. Walsh. Even during the three-day revocation period, it appears that Ms. Coker sought no advice concerning documents that she now claims she did not understand. See Weston, 857 So.2d at 288. HCR prevented no such action by Ms. Coker.
We cannot agree with Mrs. Bland's contention that procedural unconscionability is evident. The totality of the circumstances before the trial court demonstrates that Ms. Coker, acting for her mother, had a meaningful opportunity to review the Agreement and to accept or reject its terms before she signed it. Moreover, she did not obtain further guidance about or reconsider her decision during the revocation period. Ms. Coker's limited education and apparent failure to consider carefully the Agreement cannot, on the record before us, compel a conclusion that she was forced to accede to a procedurally unconscionable arrangement. See Weston, 857 So.2d at 284.
Mrs. Bland's reliance on Romano v. Manor Care, Inc., 861 So.2d 59, 60-63 (Fla. 4th DCA 2003), review denied, 874 So.2d 1192 (Fla.2004), is unavailing. In Romano, the elderly husband of a nursing home resident signed an arbitration agreement *257 shortly after his wife's admission and after being told that he had to sign it. The court concluded that the circumstances surrounding execution of the arbitration agreement demonstrated some quantum of procedural unconscionability. Id. at 62; see also Prieto v. Healthcare & Ret. Corp. of Am., 919 So.2d 531 (Fla. 3d DCA 2005) (holding agreement unconscionable where father was enroute from hospital to nursing home, and daughter was told to execute documents before he arrived). Notably, Romano employed a "sliding scale" approach to testing the unconscionability of an arbitration agreement. Romano, 861 So.2d at 62. Under this standard, a high degree of substantive unconscionability coupled with even scant evidence of procedural unconscionability renders an arbitration agreement unenforceable. Id. Romano concluded that the limitations on the remedies available to the nursing home resident abrogated statutory rights and, consequently, rendered the arbitration agreement a contract of "egregious substantive unconscionability." Id. at 64.
This court, however, eschews the "sliding scale" approach. Rather, we assess procedural unconscionability and substantive unconscionability independently. Petsch, 872 So.2d at 265 (citing Eldridge v. Integrated Health Servs., Inc., 805 So.2d 982 (Fla. 2d DCA 2001)). Having concluded that the trial court properly determined that the Agreement was not procedurally unconscionable, we need not address the issue of substantive unconscionability. Id.; Fonte v. AT & T Wireless Servs., Inc., 903 So.2d 1019, 1027 (Fla. 4th DCA 2005) (finding no need to address substantive unconscionability where there is finding that procedural unconscionability is lacking).
Although our precedent precludes us from assessing the remedial limitations under the substantive unconscionability rubric, we recognize Mrs. Bland's separate contention that those limitations violate public policy as expressed in the Nursing Home Residents' Rights Act. Public policy and unconscionability concerns, albeit based on similar facts, are distinct issues. Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296, 299 (Fla. 4th DCA), review denied, 917 So.2d 195 (Fla.2005). Mrs. Bland raised this argument in a trial court memorandum opposing HCR's motion to dismiss and to compel arbitration.[2] She did not advance this argument at the motion hearing, however. Consequently, the trial court did not rule on the issue. See Miller v. Miller, 709 So.2d 644, 645 (Fla. 2d DCA 1998) (holding court cannot address on appeal appellant's issue not ruled upon by trial court); Philip J. Padovano, Florida Appellate Practice § 8.1, at 144 (2006 ed.). Despite the absence of a specific ruling, we are, nonetheless, compelled to address an issue that is becoming a recurrent theme in cases brought before the district courts of appeal.
We are mindful that some courts, on public policy grounds, have refused to enforce remedial limitations in nursing home arbitration or have refused totally to *258 order arbitration where such restrictions are present. See Blankfeld, 902 So.2d 296; Lacey v. Healthcare & Ret. Corp. of Am., 918 So.2d 333 (Fla. 4th DCA 2005). The remedial limitations in nursing home arbitration may be troubling to some. After all, the Nursing Home Residents' Rights Act is "[a] remedial statute . . . designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good." Lacey, 918 So.2d at 334. Unquestionably, the legislature enacted the statute to protect some of Florida's most vulnerable residents. § 400.011; Romano, 861 So.2d at 63; Mang v. Country Comfort Inn, Inc., 559 So.2d 672, 673 (Fla. 3d DCA 1990). Arguably, therefore, the Agreement's remedial limitations undermine the statute's salutary purposes. While superficially appealing, the argument is too facile.
We also must recognize that Florida public policy favors arbitration. Petsch, 872 So.2d at 263; Maguire v. King, 917 So.2d 263 (Fla. 5th DCA 2005). Nothing in the Nursing Home Residents' Rights Act reflects a legislative hostility to arbitration. Moreover, as a general proposition, a party may waive statutory rights. Unicare Health Facilities, Inc. v. Mort, 553 So.2d 159, 161 (Fla.1989); see also Kaplan v. Kimball Hill Homes Fla., Inc., 915 So.2d 755 (Fla. 2d DCA 2005). The Nursing Home Residents' Rights Act does not expressly prohibit a contractual waiver or limitation of statutory rights. Cf. Holt v. O'Brien Imports of Fort Myers, Inc., 862 So.2d 87, 90 (Fla. 2d DCA 2003) (noting statute prohibited fee waiver). The legislature could have included such a restriction in the Nursing Home Residents' Rights Act. Petsch, 872 So.2d at 261; see, e.g., § 769.06 (prohibiting contracts limiting liability in context of fellow servant act as illegal and void). Accordingly, a compelling argument can be made that, absent a legislative restriction, the courts should honor a party's decision to contract away statutory protections. See § 400.151(2) (stating that nursing home contract shall include "any other matters which the parties deem appropriate").
Despite these competing, and compelling, arguments, once the trial court completes its three-prong task under Seifert, 750 So.2d at 636, we see no reason why the arbitrator, in the first instance, cannot decide whether to enforce the remedial limitations. Kaplan, 915 So.2d at 761; Petsch, 872 So.2d at 264; Rollins, Inc. v. Lighthouse Bay Holdings, Ltd., 898 So.2d 86 (Fla. 2d DCA) (noting that arbitrator should in first instance decide validity of remedial restrictions in arbitration provision), review denied, 908 So.2d 1057 (Fla. 2005). Such a determination is well within the arbitrator's ken. Buckeye Check Cashing v. Cardegna, ___ U.S. ___, ___, 126 S.Ct. 1204, 1210, 163 L.Ed.2d 1038 (2006) (holding that regardless of whether challenge is brought in federal or state court, challenge to validity of contract as whole, and not specifically to arbitration clause, must go to arbitrator).
The arbitrator can assess the public policy concerns in the context of a fully developed factual record. Conceivably, the evidence presented in arbitration could render these concerns moot. For example, a factual finding that noneconomic losses did not exceed $250,000 would render the contractual limitation irrelevant. Similarly, a finding that the evidence did not justify an award of punitive damages would eliminate the need to address the validity of a punitive damages bar.
Nothing in the Agreement limits the arbitrator's authority to enforce, or refuse to enforce, the remedial limitations. Cf. Holt, 862 So.2d at 89 (holding arbitration agreement unenforceable where it precluded arbitrator from awarding injunctive relief); *259 Flyer Printing Co. v. Hill, 805 So.2d 829, 833 (Fla. 2d DCA 2001) (upholding circuit court's refusal to enforce fee splitting provision of arbitration agreement because it contravened statute and defeated its remedial purpose). This case is unlike Blankfeld, 902 So.2d at 299, where the governing rules of the arbitration body imposed burdens of proof that effectively precluded recovery for negligence. The Agreement contains no such restrictions. Indeed, the Agreement commands that "the arbitrator shall apply, and the arbitration award shall be consistent with Florida law. . . ." The parties, in effect, have empowered the arbitrator to address Mrs. Bland's public policy concerns. Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327 (11th Cir.2005). The arbitrator may exercise that authority and determine whether the Agreement's remedial limitations are enforceable.
Affirmed.
STRINGER and SILBERMAN, JJ., Concur.
NOTES
[1] The Agreement was intended to be signed by "Resident, Guardian or Other Legal Representative." The nature of Ms. Coker's authority to execute the Agreement for her mother was not addressed in this appeal.
[2] In her trial court memorandum, Mrs. Bland also suggested that allowing arbitration of nursing home claims under chapter 400 violated Florida public policy. To the extent the Agreement implicates interstate commerce, we note that such a result could trigger federal preemption concerns under the Federal Arbitration Act. See 9 U.S.C. § 1 et seq.; Buckeye Check Cashing, Inc. v. Cardegna, ___ U.S. ___, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).