988 So.2d 639 (2008)
Gayle SHOTTS, as Personal Representative of the Estate of Edward Henry Clark, Appellant,
v.
OP WINTER HAVEN, INC.; Re Winter Haven, Inc.; Tandem Regional Management of Florida, Inc.; Tandem Health Care, Inc.; Gail Ward a/k/a Gail Lurie Ward; Nancy C. Thompson; Michael Bradley; and Irena Blackburn a/k/a Irena Tarran Blackburn as to Tandem Health Care of Winter Haven, Appellees.
No. 2D07-2635.
District Court of Appeal of Florida, Second District.
June 18, 2008.
Rehearing Denied August 11, 2008.
*640 Isaac R. Ruiz-Carus and Blair N. Mendes of Wilkes & McHugh, P.A., and Susan B. Morrison of Law Office of Susan B. Morrison, P.A., Tampa, for Appellant.
Antonio A. Cifuentes and Daniel E. Dias of Mancuso & Dias, P.A., Tampa, for Appellees.
SALCINES, Judge.
Gayle Shotts, as personal representative of the estate of her uncle, Edward Henry Clark, appeals the nonfinal order granting the motion to compel binding arbitration filed by the defendants below: OP Winter Haven, Inc.; RE Winter Haven, Inc.; Tandem Regional Management of Florida, Inc.; Tandem Health Care, Inc.; Gail Ward a/k/a Gail Lurie Ward; Nancy C. Thompson; Michael Bradley; and Irena Blackburn a/k/a Irena Tarran Blackburn (as to Tandem Health Care Of Winter Haven) (hereinafter collectively "Tandem"). We conclude that the trial court properly found the arbitration agreement was not unconscionable. To the extent that the arbitration agreement contains limitations that may be unenforceable, we conclude that the arbitrators have the *641 power to restrict the agreement through use of its severability clause. Accordingly, we affirm the order compelling arbitration.
In 1977, Mr. Clark was involved in an automobile accident, and he sustained brain damage. He required twenty-four-hour-a-day care. For many years, Mr. Clark's care was provided by his niece, Ms. Shotts, in her home. Eventually he was placed in a nursing home. Thereafter, on May 23, 2003, Mr. Clark was moved from the nursing home and admitted to Tandem Health Care of Winter Haven. He remained there until his death on November 23, 2003.
Ms. Shotts, as personal representative, filed a complaint against the defendants alleging negligence and breach of fiduciary duties. The complaint contained a claim for wrongful death and an alternative claim for injuries not resulting in death. At least at this point, Ms. Shotts has not sought to amend the complaint to allege punitive damages. See § 768.72, Fla. Stat. (2003).
In response to the complaint, Tandem moved to compel arbitration based on an arbitration agreement executed by Ms. Shotts on behalf of her uncle.[1] In her memorandum in opposition to arbitration, and at the hearing conducted to consider the motion, Ms. Shotts argued that the agreement was not valid and enforceable because it was unconscionable and violated public policy. The trial court found no merit in Ms. Shotts argument and granted the motion to compel. It concluded that the agreement was "enforceable, not severable and not repugnant to the public policy of the State of Florida."
In order to review the issue of unconscionability of the arbitration agreement, the events surrounding Mr. Clark's admission into the Tandem Health Care facility must be examined. At that time, Ms. Shotts was presented with admissions paperwork. The documentation included an arbitration agreement that was separate from the remainder of the admissions paperwork. The evidence presented at the hearing on the motion to compel arbitration revealed that Ms. Shotts was not rushed into signing the arbitration agreement. Although Ms. Shotts testified in her deposition that she did not fully understand the meaning of the terms of the arbitration agreement, she was not prevented from asking for assistance from the admissions director before she signed the document.
In order to succeed on a claim of unconscionability, a party must establish both procedural and substantive unconscionability. Bland, ex rel. Coker v. Health Care & Ret. Corp. of Am., 927 So.2d 252, 256 (Fla. 2d DCA 2006). In the present case, as in Bland, the arbitration agreement was "worded clearly, conspicuous and separate from other [admissions] documents." See Bland, 927 So.2d at 254. The facts of the present case are not comparable to those found in Woebse v. Health Care & Retirement Corp. of America, 977 So.2d 630 (Fla. 2d DCA 2008), in which this court found the plaintiff had demonstrated that the practices of the nursing home relating to the signing of the arbitration agreement were procedurally unconscionable. See also Romano v. Manor Care, Inc., 861 So.2d 59, 61-64 (Fla. 4th DCA 2003). Simply stated, the evidence did not compel the trial court to find procedural unconscionability in this case. Because the trial court must find both procedural and substantive unconscionability in *642 order to grant relief to a complaining party, we do not further review the issue to determine whether there was competent, substantial evidence of substantive unconscionability. See Bland, 927 So.2d at 257. We conclude that the trial court correctly determined that the arbitration agreement was not unconscionable.
Ms. Shotts also argues that the arbitration agreement cannot be enforced because it is contrary to public policy. She supports her argument by pointing out that the agreement includes remedial limitations which abrogate rights specifically conferred upon nursing home residents by the Nursing Home Residents Act, under chapter 400, Florida Statutes (2003). Specifically, she argues that the agreement eliminates the right to recover punitive damages and directs that the arbitration proceedings shall be conducted in accordance with the American Health Lawyers Association Arbitration Rules of Procedure.[2] The arbitration agreement involved in Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296, 299 (Fla. 4th DCA 2005) (en banc), contained a similar provision. The Fourth District found the agreement to be against public policy because it required any controversy to be resolved by binding arbitration administered by the National Health Lawyers Association ("NHLA"). The opinion stated that section 606 of the NHLA Rules [now known as the American Health Lawyers Association Arbitration Rules of Procedure] provided in part:
(T)he arbitrator may not award consequential, exemplary, incidental, punitive or special damages against a party unless the arbitrator determines, based on the record, that there is clear and convincing evidence that the party against whom such damages are awarded is guilty of conduct evincing an intentional or reckless disregard for the rights of another party or fraud, actual, or presumed.
The Blankfeld court concluded that requiring clear and convincing evidence of intentional or reckless misconduct effectively eliminates recovery for negligence and was contrary to the Nursing Home Residents *643 Act, section 400.023(2), Florida Statutes (2001).[3]Blankfeld, 902 So.2d at 298-99. This same remedial limitation was also found to be against public policy in Place at Vero Beach, Inc. v. Hanson, 953 So.2d 773, 774-75 (Fla. 4th DCA 2007); Fletcher v. Huntington Place Ltd. Partnership, 952 So.2d 1225, 1226-27 (Fla. 5th DCA 2007); SA-PG-Ocala, LLC v. Stokes, 935 So.2d 1242, 1242-43 (Fla. 5th DCA 2006); Lacey v. Healthcare & Ret. Corp. of America, 918 So.2d 333, 334 (Fla. 4th DCA 2005).[4] However, our review does not end here.
In the order granting the motion to compel, the trial court made the specific determination that the arbitration agreement was not severable. It is not clear to this court why the trial court made this decision. Because the trial court did not find the agreement to be unconscionable or violative of public policy, it had no reason to evaluate the severability of any improper provisions within the agreement. Because it appears that provisions of this agreement may violate public policy, we consider the issue of severability and conclude that the trial court erred in that regard.
A trial court's decision to grant a motion to compel arbitration is based in part on factual findings. Accordingly, the decision presents a mixed question of law and fact. Appellate review of the trial court's factual findings is limited to determining whether they are supported by competent, substantial evidence. However, a de novo standard of review is applicable to the trial court's construction of the arbitration provision and to the trial court's application of the law to the facts found. See Fonte v. AT & T Wireless Servs., Inc., 903 So.2d 1019, 1023 (Fla. 4th DCA 2005).
In our de novo review, we conclude that the trial court erred when it found the offensive arbitration clauses could not be severed from the remainder of the arbitration agreement. We hold that the remedial limitation provisions which state that the arbitration agreement be conducted in accordance *644 with the AHLA Procedures and that "arbitrators shall have no authority to award punitive damages" are not so interrelated and interdependent with the remainder of the arbitration agreement that they cannot be severed by the arbitrators if necessary. We note that the agreement anticipates the use of AHLA procedures but specifies that damages "shall be determined in accordance with the provisions of Florida law applicable to comparable civil action, except [for punitive damages]." Nothing suggests that the arbitrators could not easily resolve this case using proper elements of damage under Florida law and with the appropriate burden of proof. See Rollins, Inc. v. Lighthouse Bay Holdings, Ltd., 898 So.2d 86, 88 (Fla. 2d DCA 2005).
We note that although the appellate courts determined that the arbitration agreements in Place at Vero Beach, Fletcher, SA-PG-Ocala, Lacey, and Blankfeld were invalid because they violated public policy, these cases are distinguishable. The arbitration agreements in those cases contained no severance agreement (SA-PG-Ocala, 935 So.2d at 1243; Lacey, 918 So.2d at 335), or the court determined that the "offending" provisions of the arbitration agreement were not severable (Place at Vero Beach, Inc., 953 So.2d at 775; Fletcher, 952 So.2d at 1227), or the court did not reach the severability issue (Blankfeld, 902 So.2d at 299). We hold that the trial court erred when it concluded that any offensive clauses within this arbitration agreement could not be severed by the panel of arbitrators from the remainder of the arbitration agreement if necessary. Accordingly, if the arbitrators find any portion of the arbitration clause to be unenforceable or invalid, the arbitrators will have the ability to sever the improper provisions from the remaining provisions and enforce the remainder of the agreement according to its terms.
In summary, the trial court correctly found that the arbitration agreement was not unconscionable. It is possible, especially if Ms. Shotts pursues a claim for punitive damages, that portions of the arbitration agreement could be found to be against public policy; however, the trial court erred when it concluded that the arbitration agreement was not severable. Accordingly, because the arbitrators will have the ability to sever any offending clauses of the arbitration agreement, we affirm the trial court's order granting the motion to compel and remand this case for further proceedings.
Affirmed and remanded.
ALTENBERND and KELLY, JJ., Concur.
NOTES
[1] Ms. Shotts represented the interests of Mr. Clark under the terms of a durable power of attorney. Although Ms. Shotts argued that the power of attorney was invalid, she failed to meet her burden of proof.
[2] The agreement states in pertinent part:

The arbitration shall be conducted at a place agreed upon by the parties, or in the absence of such agreement, in Winter Park, Florida, in accordance with the American Health Lawyers Association ("AHLA") Alternative Dispute Resolution Service Rules of Procedure for Arbitration (unless otherwise modified herein) which are hereby incorporated into this Agreement, and not by a lawsuit or resort to court process.
. . . .
Unless otherwise agreed to by the parties, the arbitration hearing shall be conducted before a panel of three arbitrators, (selected from the AHLA Procedures Panel), one chosen by each side in the dispute with the third to be chosen by the two arbitrators previously chosen. . . . The arbitration hearing and other proceedings relative to the arbitration of the claim, including discovery, shall be conducted in accordance with the AHLA Procedures that do not conflict with the FAA. The parties agree that damages awarded, if any, in an arbitration conducted pursuant to this Binding Arbitration Agreement shall be determined in accordance with the provisions of Florida law applicable to comparable civil action, except that the parties acknowledge that the arbitrators shall have no authority to award punitive damages or any other damages not measured by the prevailing party's actual damages, and the parties expressly waive their right to obtain such damages in arbitration or in any other forum. The arbitration panel shall have the authority to award equitable relief (i.e. relief other than monetary), should the arbitrators so decide.
(Emphasis added.) We note that the arbitration agreement states that the agreement would be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). Neither party argued to the trial court nor to this court that the terms of the FAA would support or defeat the motion to compel arbitration.
[3] Section 400.023(2) states:

In any claim brought pursuant to this part alleging a violation of resident's rights or negligence causing injury to or the death of a resident, the claimant shall have the burden of proving, by a preponderance of the evidence, that:
(a) The defendant owed a duty to the resident;
(b) The defendant breached the duty to the resident;
(c) The breach of the duty is a legal cause of loss, injury, death, or damage to the resident; and
(d) The resident sustained loss, injury, death, or damage as a result of the breach. . . .
[4] In Bland, 927 So.2d 252, the issue of whether the arbitration agreement involved in that case violated public policy was not ruled on by the trial court; accordingly, the issue was not before this court. However, in dicta this court expressed its opinion concerning the arbitration agreement and found there was nothing in the agreement signed by Ms. Coker on behalf of Mrs. Bland that limited the arbitrator's authority to enforce, or refuse to enforce, remedial limitations. Id. at 257-58. The opinion notes:

This case is unlike Blankfeld [v. Richmond Health Care, Inc.], 902 So.2d [296,] 299 [(Fla. 4th DCA 2005)], where the governing rules of the arbitration body imposed burdens of proof that effectively precluded recovery for negligence. The Agreement contains no such restrictions. Indeed, the Agreement commands that "the arbitrator shall apply, and the arbitration award shall be consistent with Florida law. . . ." The parties, in effect, have empowered the arbitrator to address Mrs. Bland's public policy concerns. Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327 (11th Cir.2005). The arbitrator may exercise that authority and determine whether the Agreement's remedial limitations are enforceable.
Bland, 927 So.2d at 259. This dicta in Bland makes that case distinguishable from the facts in the present case.