22 So.3d 96 (2009)
MANORCARE HEALTH SERVICES, INC.; Manor Care of America, Inc.; Manor Care, Inc.; Russell Ward; Douglas Webb; and Michelle Wicks, Appellants,
v.
Catherine STIEHL, as Personal Representative of the Estate of Florence C. Halloran, Deceased, Appellee.
No. 2D08-2351.
District Court of Appeal of Florida, Second District.
August 21, 2009.
*97 Sylvia H. Walbolt, Matthew J. Conigliaro, and Annette Marie Lang of Carlton Fields, P.A., St. Petersburg, for Appellants.
Isaac R. Ruiz-Carus and Donna K. Hanes of Wilkes & McHugh, P.A., Tampa, and Susan B. Morrison of Law Offices of Susan B. Morrison, P.A., Tampa, for Appellee.
PER CURIAM.
ManorCare Health Services, Inc. (Manor Care), challenges the trial court's nonfinal order denying its motion to compel arbitration of Catherine Stiehl's action as personal representative of the Estate of Florence Halloran against Manor Care for negligence, wrongful death, and breach of fiduciary duties.
This case requires us to decide the enforceability of an arbitration agreement that contains remedial limitations which, Ms. Stiehl argues, violate public policy. To the extent the arbitration agreement contains remedial limitations that may be unenforceable, we conclude that the arbitrator is empowered to sever those provisions from the agreement. We accordingly reverse the trial court's order and remand for further proceedings.

I.
In December 2005, Florence Halloran was admitted as a resident to Manor Care of Palm Harbor. On the day of Ms. Halloran's admission, her daughter, Catherine Stiehl, signed various admission papers as *98 attorney-in-fact on Ms. Halloran's behalf.[1] One of these documents was titled "Voluntary Arbitration and Limitation of Liability Agreement" (the Agreement).
Five months after her admission, Ms. Halloran died. Eleven months later, her estate filed a lawsuit against Manor Care, alleging violations of the Nursing Home Residents Act. See §§ 400.022, .023, Fla. Stat. (2005). Manor Care moved to compel arbitration, relying on the provisions of the Agreement.
The Agreement is five pages long and consists of five sections. Appendix A of this opinion reproduces the Agreement in full. The Agreement provides, in pertinent part, as follows:
A. Arbitration Provisions
1.1 Any and all claims or controversies between the Facility and the Resident arising out of or in any way relating to the Resident's stay at the Facility, including disputes regarding interpretation of this Agreement, whether arising out of State or Federal law, and whether based upon statutory duties, breach of contract, tort theories or other legal theories (including, without limitation, any claim based on Florida Statutes §§ 400.022, 400.023, 400.428, 400.429, or a claim for unpaid nursing home or related charges), shall be submitted to final and binding arbitration. Except as expressly set forth herein, the provisions of the Florida Arbitration Code, Florida Statu[t]es § 682.01 et seq., shall govern the arbitration. Each party hereby waives its right to file a court action for any matter covered by this Agreement.
. . . .
D. Nonseverability
In the event any provision of this agreement is determined by a court of competent jurisdiction, an arbitrator or arbitrator panel to be unenforceable for any reason, either party may thereafter cancel this agreement by giving written notice to such effect within 10 days after such determination. Upon such cancellation, any award, ruling or order under this agreement shall be considered null and void and unenforceable.
Other provisions of the Agreement cap non-economic damages at $250,000 and eliminate punitive damages. Under the Agreement, Manor Care agrees to pay the arbitrator's fees and costs, and the parties to the agreement waive any right to recover attorney's fees.
The Agreement places limitations on the discovery process. Any arbitration under the Agreement would occur in Pinellas County before a single arbitrator, who must be a retired judge or member of the Florida Bar with ten years' experience as an attorney. The Agreement additionally states that any arbitration award must be in accordance with Florida law and provides for entry of a binding arbitration award without any appeal, except as provided by Florida law. See § 682.13(1)(a)-(e), Fla. Stat. (2005); Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327, 1328-29 (Fla.1989).
In the trial court, Ms. Stiehl argued that the remedial limitations within the arbitration agreement were void as against public policy and not severable from the Agreement. Ms. Stiehl asked that the trial court provide the option to cancel the Agreement. The trial court agreed with Ms. Stiehl's argument, found the remedial limitations invalid, and entered an order denying Manor Care's motion to compel *99 arbitration. Manor Care now challenges that ruling on appeal.

II.
On appeal, Manor Care argues that the trial court should have compelled arbitration because the remedial limitations are not void as against public policy and, assuming that they are, an arbitrator may sever them from the Agreement. While we do not address the enforceability of the remedial limitations, we agree that such limitations may be severed from the arbitration agreement. We accordingly conclude that the trial court erred in declining to compel arbitration, and we reverse and remand for further proceedings.
The right to compel arbitration arises from an agreement of the parties. As a result, the trial court's role in deciding whether to compel arbitration is limited to three "gateway" issues: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). The sole consideration in this case relates to the first issuethat is, whether the arbitration agreement is valid despite remedial limitations that, Ms. Stiehl argues, defeat the public policy expressed under the Nursing Home Residents Act.
In challenging the validity of an arbitration agreement, a party must assert defenses applicable to all contractsdefenses such as fraud, duress, or unconscionability. Global Travel Mktg., Inc. v. Shea, 908 So.2d 392, 397 (Fla.2005); see also Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 283 (Fla. 1st DCA 2003) (observing that both the Federal Arbitration Act and the Florida Arbitration Code permit a challenge to the validity of an arbitration provision based upon state-law contract defenses). A trial court is to review those defenses which go to the validity of the arbitration agreement itself, rather than to the enforceability of the contract as a whole. See Seifert, 750 So.2d at 636; see also John B. Goodman Ltd. P'ship v. THF Constr., Inc., 321 F.3d 1094, 1095 (11th Cir.2003).
We recognize that courts have, on public policy grounds, invalidated arbitration agreements found to defeat the remedial purpose of a statute on which the suit is based. See, e.g., Powertel, Inc. v. Bexley, 743 So.2d 570 (Fla. 1st DCA 1999); see also Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1059 (11th Cir.1998). Additionally, courts in this state have specifically found arbitration agreements containing remedial limitations similar to those presented here to render an agreement to arbitrate void and unenforceable. See Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296 (Fla. 4th DCA), review denied, 917 So.2d 195 (Fla.2005); Lacey v. Healthcare & Ret. Corp. of Am., 918 So.2d 333 (Fla. 4th DCA 2005).
Nonetheless, this district has treated the validity of such remedial limitations to be beyond the initial gateway determination of an arbitration agreement's enforceability where the limitations are severable from the agreement to arbitrate. See, e.g., Bland ex rel. Coker v. Health Care & Ret. Corp. of Am., 927 So.2d 252, 258 (Fla. 2d DCA 2006) (observing that there is "no reason why the arbitrator, in the first instance, cannot decide whether to enforce the remedial limitations"); Rollins, Inc. v. Lighthouse Bay Holdings, Ltd., 898 So.2d 86, 89 (Fla. 2d DCA 2005) (concluding plaintiff's claims "should be arbitrated and that the arbitrator should in the first instance decide the validity of the remedial restrictions in the arbitration provision"). In this circumstance, the enforceability of the remedial limitations may *100 be considered by the arbitrator "in the context of a fully developed factual record." Bland, 927 So.2d at 258. If the arbitrator determines the remedial limitations to be unenforceable, the limitations may be severed from the remainder of the agreement. See also Orkin Exterminating Co., Inc. v. Petsch, 872 So.2d 259, 266 (Fla. 2d DCA 2004).
Significant in our decisions has been that the arbitration agreement permit severance of any provisions challenged on grounds of public policy. For instance, in Gessa ex rel. Falatek v. Manor Care of Fla., Inc., 4 So.3d 679, 682 (Fla. 2d DCA 2009), we concluded that although the arbitration agreement lacked a severability clause, the trial court properly compelled arbitration because the remedial limitations could be severed by the arbitrator. Likewise, in Shotts v. OP Winter Haven, Inc., 988 So.2d 639, 643-44 (Fla. 2d DCA 2008), we observed that, to the extent an arbitration agreement contained remedial limitations that may be violative of public policy, the agreement was enforceable where those provisions could be severed by the arbitrators. Similarly, the Eleventh Circuit has concluded that where an arbitration agreement contains remedial limitations, but also a severability clause, the validity of the remedial limitations is a question for the arbitrator to decide. Anders v. Hometown Mortgage Servs., Inc., 346 F.3d 1024, 1032 (11th Cir.2003).
The trial court here expressly concluded that the remedial limitations provision could not be severed from the agreement to arbitrate. This conclusion is understandable, given that the Agreement contains a subsection titled "[n]onseverability." However, we cannot ignore the language of the nonseverability clause. Under Florida law, to determine whether the Agreement permits severance of the remedial limitations provision, we apply the test set out in Local No. 234 v. Henley & Beckwith, Inc., 66 So.2d 818, 821-22 (Fla.1953). As the Florida Supreme Court explained there, "[w]hether a contract is ... divisible depends upon the intention of the parties," which "may be determined by a fair construction of the terms and provisions of the contract itself, and by the subject matter to which it has reference." Id. at 822 (citations and internal quotation marks omitted).
The nonseverability clause states that upon a finding that any provisions of the Agreement are deemed unenforceable by a court or an arbitrator, the parties shall have the option to cancel the Agreement. Nothing within the clause purports to render the Agreement null and void upon a finding by a court or an arbitrator that any provisions of the Agreement are unenforceable. Instead, the nonseverability clause expressly contemplates that provisions of the Agreement may be found invalid by either the court or an arbitrator.
Thus, language contained within the nonseverability clause anticipates that certain provisions of the Agreement may be deemed invalid and severed, in which case the parties would have the option of either proceeding with arbitration or withdrawing from the Agreement. Additionally, we do not find that the remedial limitation is so interrelated and interdependent that it cannot be severed by the arbitrator if necessary: the essence of the contract is an agreement to submit disputes to binding arbitration. We therefore conclude that the validity of the remedial limitations may be considered by the arbitrator and, if the limitations are found invalid, severed from the Agreement.

III.
We have decided the single gateway issue presented on appeal: whether a valid *101 agreement to arbitrate exists between Ms. Halloran and Manor Care. Because the validity of the remedial limitations may be determined by the arbitrator, we do not proceed any further. Given the presence of a clause providing the parties with the option of withdrawing from the Agreement upon any finding that the remedial limitations are unenforceable, it was unnecessary for the trial court to find the agreement to arbitrate invalid on public policy grounds. Accordingly, we reverse the trial court's order denying Manor Care's motion to compel arbitration and to stay proceedings, and we remand for further proceedings consistent with this opinion.
KHOUZAM and CRENSHAW, JJ., Concur.
ALTENBERND, J., Concurs specially with opinion.
ALTENBERND, Judge, Specially concurring.
I concur in this decision because it is consistent with the existing precedent from this district. I have come to the conclusion, however, that it is both bad policy and bad law to allow an arbitrator to make case-specific, non-precedential, confidential decisions about the enforceability of clauses in an arbitration agreement when those clauses limit or eliminate rights specially created by the legislature to protect nursing home residents. Accordingly, I would prefer to follow the approach of the other districts and permit trial courts to make decisions about these restrictive clauses prior to arbitration. See, e.g., Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham, 953 So.2d 574 (Fla. 1st DCA 2007); SA-PG-Ocala, LLC v. Stokes, 935 So.2d 1242 (Fla. 5th DCA 2006); Lacey, 918 So.2d at 335.
The language of this specific arbitration agreement heightens my concerns. I do not question the value of arbitration as an alternate dispute mechanism for use in nursing home cases, but I believe the time has come for the legislature to regulate the content of such agreementswhich should primarily provide dispute resolution proceduresbecause they are actually being used to eliminate substantive rights and remedies created by the Legislature in sections 400.022 and 400.023, Florida Statutes, for the protection of some of our most vulnerable citizens. If the legislature could establish a method by which approved, standard arbitration agreements, fair to both sides, were available for use by nursing homes and their residents in Florida, we could largely eliminate the seemingly endless supply of lawsuits and appeals addressing the language of arbitration agreements that ironically were intended to eliminate lawsuits and appeals.[2]

I. A Brief Review of the Contents of this Arbitration Agreement
The arbitration agreement in this case, which is attached as an appendix to this opinion, is well written. It is further explained in a short information pamphlet provided by Manor Care. There is nothing to suggest that this agreement or the methods by which the resident is bound by this agreement are procedurally unconscionable. On the other hand, the drafters of this agreement do not disclose the very limited benefit of this agreement to the resident and the considerable benefit received by Manor Care. A careful review of the agreement causes one to wonder why any resident who actually understood the agreement, assuming it is voluntary and *102 does not affect the price of care at the facility, would ever sign such a one-sided arrangement. There is a good argument that the agreement is substantively unconscionable, but that is irrelevant in this district so long as it is not procedurally unconscionable.[3]
The agreement is repeatedly described as "voluntary," and the resident or resident's agent is assured that the "signing" of this agreement is not "mandatory." However, if voluntarily signed, it creates mandatory, binding arbitration subject to extremely limited rights of appeal. It is not a voluntary agreement in the sense that the parties decide whether to use the program only after a claim has arisen; it applies mandatorily to all future disputes.
The benefit of this agreement is described in the first paragraph as helping the parties "avoid crowded court dockets and lengthy appellate procedures." Not only has that benefit not been achieved in this case and the many cases in which the parties fight over the content of the arbitration agreement, but also the first paragraph does not really explain the detriments of signing the agreement. The resident is told in bold print that it does contain a waiver of statutory rights and that it should be read carefully, but a brief description of the rights waived and the consideration for that waiver, which easily could be recited, is not recited.
The benefits for the parties and the primary substantive consideration for this agreement appear to be provided in section 1.2 of the Limitation of Liability. The benefit for the resident appears to be that, if a dispute arises over unpaid nursing home charges, Manor Care agrees not to make a claim for pre-judgment interest on those charges. The benefit for Manor Care is that non-economic damages are capped at $250,000, and punitive damages can never be awarded no matter how egregious the violation of the nursing home resident's rights. Intuitively, this does not appear to be an agreement in which both sides are receiving equivalent economic benefit.
The imbalance, however, is perhaps more pronounced within the arbitration procedures. The procedures require an extensive document production prior to arbitration, but only a designated expert may be deposed. Thus, if Manor Care brings a claim for unpaid nursing home charges, the resident has no ability to depose anyone in the billing department. It seems highly unlikely that employees of Manor Care will be willing to give voluntary statements against the interest of their employers to the attorneys representing a resident. Of even greater concern, if a resident has an accident in the facility, he or she will be unable to depose employees and other witnesses prior to arbitration. As a result, it may be impossible even to obtain sufficient information to provide to an expert so that the expert can reach an opinion. Given that residents tend to be elderly, frail, and forgetful, there is a real risk that a resident making a claim in arbitration will never be able to obtain useful statements from other residents for use in these proceedings, and compelling such resident witnesses to attend arbitration may not be feasible. The arbitration agreement does not explain that the resident is avoiding crowded court *103 dockets and lengthy appeals by agreeing to procedures that significantly reduce the resident's ability to prevail in the dispute.[4]

II. The Effect of a Procedural Rule of Law Permitting Arbitrators to Determine the Enforceability of Standardized Limitations in Form Contracts Is to Eliminate the Rule of Law Governing the Substantive Rights of the Nursing Home Residents.
In this district, we have decided that arbitrators in nursing home cases should decide on the validity of remedial limitations. In the context of a dispute between two large corporations that have agreed to use arbitration to resolve disputes arising out of a unique contract, that approach seems workable. However, in the context of a dispute between a corporation that essentially has physical custody of an elderly person and that person's guardian, when the dispute arises not from contract law, but from special rights created by the legislature for the protection of the elderly, and when the contract is not a unique contract negotiated on a level playing field, but a form contract applicable to a large group of senior citizens, I think it is a mistake to delegate these legal decisions to the arbitrator.[5]
If a trial judge decides that a clause of the arbitration agreement is enforceable or unenforceable, the order is a public order and an aggrieved party can appeal that ruling. The district court can review the order, and whether the district court affirms or reverses, it can create precedent that resolves the matter for future similar claims. If the agreement needs to be refined for future residents, the drafters have guidance, and if the legislature concludes that the court has misinterpreted the rights it created, the statute can be amended.
If an arbitrator makes a similar decision, the parties have agreed to maintain the confidentiality of the arbitrator's "conclusions of law." The agreement prevents an appeal, and the limited judicial review in circuit court permitted by section 682.13 will not permit a judicial review of such a ruling. Not only does this procedure prevent the creation of binding precedent, it creates nothing approaching the rule of law.
For example, hypothetically, if a fire breaks out in a care facility due to the extraordinary negligence of the corporate owner under circumstances that would warrant punitive damages in circuit court and that fire kills five residents, they are likely to present their cases to five different arbitrators. In this hypothetical, two arbitrators decide to override the agreement and permit punitive damages to be awarded. Three do not. Two arbitrators enforce all of the limitations, and one eliminates the cap on non-monetary damages but maintains the prohibition on punitive damages. Only the nursing home corporation *104 will know that the results were so different and resulted in vastly different awards. None of the rulings will bind any future claims. No one will have a right to appeal or challenge the different rules of law applied to the same circumstances under the same statutory and contractual law. In passing the bill of rights for nursing home residents, the Legislature cannot conceivably have envisioned such a result.
If anything, the "nonseverability" clause in this agreement makes this court's approach to this issue more troublesome. The "nonseverability" clause provides that either party may cancel the agreement even after an arbitrator has announced his or her rulingif the arbitrator determines that any provision of the agreement is unenforceable. It is not obvious to me that Manor Care would ever argue that a portion of the arbitration agreement that it drafted was unenforceable. Thus, only when a resident prevails before the arbitrator on the enforceability of some clause will the agreement become voidable. Thus, in the above examples, in the two cases where the arbitrators awarded punitive damages, the nursing home will undoubtedly choose to cancel the agreement. At that point, the resident must file a lawsuit.[6] In the two cases where all of the limiting provisions were enforced, in light of confidentiality, the corporation will pay the claims and the residents will never have a right to know that the other residents' cases were referred to the courts. For the residents, on first examination, the "nonseverability" clause might appear bilateral, but in application it appears to benefit Manor Care exclusively.

III. The Need for Legislation.
There are now over thirty-five written appellate opinions in Florida addressing arbitration agreements between nursing home operators and their residents.[7] Unquestionably *105 there are many appeals involving these agreements that have not resulted in written opinions and even more challenges at the trial court level that did not result in appeals. Arbitration was intended to create a speedy and economically efficient dispute resolution process for the residents of nursing homes. Instead, it has tended to create a round of time-consuming, expensive litigation prior to whatever dispute resolution method ultimately resolves the case. It is only human that the nursing home facilities have tended to create arbitration agreements that favor the nursing homes. In the case of the relationship between insurance companies and their insured Florida families, we have created regulations to level the playing field and protect the property rights of our families while recognizing the legitimate needs of the insurance companies. It seems to me that we have reached a point where the human rights of our senior citizens deserve no less. The judiciary is ill-equipped to provide that protection, but the Legislature could do so with ease.

APPENDIX A

VOLUNTARY ARBITRATION AND LIMITATION OF LIABILITY AGREEMENT
This agreement sets forth a dispute resolution procedure by which the parties intend to resolve all disputes which may arise between them concerning the Resident's stay in the Facility. The procedure is intended to be a speedy and economic alternative to court litigation which is often slow, time-consuming and expensive. By using private arbitration without the right to appeal, the parties are able to avoid crowded court dockets and lengthy appellate procedures. Further, the stream-lined discovery procedures enable the parties to reduce overall costs and expenses while maintaining the opportunity to develop all pertinent facts.
The Resident acknowledges that he/she voluntarily enters into this agreement and agrees to be bound by the terms and conditions stated herein.
THIS AGREEMENT CONTAINS A WAIVER OF STATUTORY RIGHTS. PLEASE READ CAREFULLY
THE SIGNING OF THIS AGREEMENT IS NOT MANDATORY. ARBITRATION IS A COMPLETELY VOLUNTARY PROGRAM.
IF YOU ELECT NOT TO SIGN THIS AGREEMENT THE RESIDENT'S ADMISSION TO THIS FACILITY WILL NOT BE AFFECTED IN ANY WAY
A. ARBITRATION PROVISIONS

1.1 Any and all claims or controversies between the Facility and the Resident arising out of or in any way relating to the Resident's stay at the Facility, including disputes regarding interpretation of this Agreement, whether arising out of State or Federal law, and whether based upon statutory duties, breach of contract, tort theories or other legal theories (including, without limitation, any claim based on Florida Statutes §§ 400.022, 400.023, 400.428, 400.429, or a claim for unpaid nursing home or related charges), shall be submitted to final and binding arbitration. Except as expressly set forth herein, the provisions of the Florida Arbitration Code, Florida Statutes § 682.01, et seq., shall govern the arbitration. Each party hereby *106 waives its right to file a court action for any matter covered by this Agreement.
1.2 Demand for Arbitration shall be made in writing and be submitted to the other party to this Agreement via certified mail, return receipt requested; the party submitting the Demand for Arbitration is referred to as the "Submitting Party"; the party opposing the Demand for Arbitration is referred to as the "Opposing Party". The term "Facility" refers to ManorCare of Palm Harbor, its corporate owners, agents, employees, administrators and licensees, and all affiliates thereof. The term "Resident" means FLORENCE HALLORAN and includes any legal representative, family member, agent, executor, guardian, power of attorney or any other person acting for, on behalf of or through FLORENCE HALLORAN.

1.3 The arbitration proceedings shall take place in Pinellas County, Florida.
1.4 The arbitration panel shall be composed of one (1) arbitrator. Subject to the requirements of Section 1.5 herein, the parties shall agree upon an arbitrator who must either be a retired Florida civil circuit court or federal judge or a member of the Florida Bar with at least ten 10 years of experience as an attorney. If the parties cannot reach an agreement on an arbitrator within 30 days of receipt of the demand for arbitration, then the selection of an arbitrator shall be submitted to the American Arbitration Association ("AAA") for selection of an arbitrator from its Commercial Panel of Arbitrators, or from some other agreed upon arbitration service. If the parties are unable to agree upon an arbitrator, then either party may apply to an appropriate court for appointment of an arbitrator.
1.5 The arbitrator shall be independent of all parties, witnesses, and legal counsel, and no officer, director, affiliate, subsidiary, or employee of a party, witness, or legal counsel may serve as an arbitrator in the proceeding.
1.6 Discovery in the arbitration proceeding shall be governed by the Florida Rules of Civil Procedure. However, discovery shall be limited to the following methods:
(1) if the Submitting Party is a Resident, the Resident shall provide the Facility with all of the following documents within 30 days after Demand for Arbitration is submitted (and Facility shall reimburse Resident .25¢ per copy):
(a) all nursing home, assisted living facility, hospital, physician, psychiatric, psychological and/or Department of Children and Families or Ombudsmen records regarding the Resident and within Resident's possession or control, and concerning the time period of the Resident's stay at the Facility and the ten (10) years prior and after.
(b) a list of all nursing homes, assisted living facilities, hospitals, clinics, and physicians or other health care providers that have provided care or treatment to the Resident including an executed Medical Authorization allowing Facility to obtain copies of all such records, at Facility's expense (Facility shall provide Resident with copies of all such records upon receipt of written request from resident, but Resident must reimburse Facility .25¢ per page);
(c) resident's birth certificate;
(d) resident's death certificate;
(e) resident's autopsy report;
(f) documentation regarding any and all medical expenses which the Resident claims were incurred due to the legal fault of the Facility;

*107 (g) all photographs and/or video tapes regarding the Resident which were taken or recorded during the Resident's stay at the Facility;
(h) all records, memos, outlines, diaries, letters, etc. drafted by the Resident during the Resident's stay at the Facility or drafted by the Resident's family or friends if such document concerns in any fashion the Resident's stay at the Facility;
(i) any sworn recorded statements to be relied upon at the arbitration hearing and including the full name, title, address and phone number of the person making the sworn statement; and
(j) proof of authority to act on behalf of the Resident.
(2) Facility shall provide the following to the Resident within 30 days after the Demand for Arbitration is received (and Resident shall reimburse Facility 25¢ per copy):
(a) the Facility's chart regarding the Resident;
(b) the Facility's business office file regarding the Resident;
(c) any 24 Hour Reports/ "Supervisors Daily Reports" regarding the Resident;
(d) any photographs taken of the Resident while at the Facility;
(e) any sworn recorded statements to be relied upon at the arbitration hearing and including the full name, title, address and phone number of the person making the sworn statement;
(3) The Submitting Party shall designate expert witnesses, if any, within 65 days after Demand for Arbitration is submitted;
(4) The Opposing Party shall have thirty (30) days after expert designation is received in which to depose such expert;
(5) The Opposing Party shall designate experts, if any, within 105 days after Demand for Arbitration is submitted;
(6) The Submitting Party shall have thirty (30) days after the Opposing Party's expert designation is received in which to depose such experts;
(7) any report or affidavit of an expert, and a list of all records contained in the expert's file, must be exchanged no later than ten (10) working days before the date of the expert's deposition;
(8) The only depositions allowed shall be of experts and any treating physicians. No other individuals may be deposed. Each deposition shall be limited to six hours per witness;
(9) the following shall be exchanged no later than fourteen (14) working days before the arbitration hearing:
(a) list of witnesses to be called at the hearing (full name, title, address and phone number if known) and an outline of each witnesses' intended testimony;
(b) list of documents to be relied upon at hearing;
(c) any sworn recorded statements to be relied upon at hearing including the full name, title, address and phone number of the statement's declarant;
(10) The arbitration hearing shall be held no later than 180 days after Demand for Arbitration is submitted.
1.7 The arbitrator shall designate a time and place within Pinellas County, Florida for the final arbitration hearing and shall provide 30 days' notice to the parties of the final hearing.
1.8 The arbitrator shall apply the Florida Rules of Evidence and Florida Rules of Civil Procedure in the arbitration proceeding *108 except where otherwise stated in this Agreement. Also, the arbitrator shall apply, and the arbitration award shall be consistent with, Florida law except as otherwise stated in this Agreement.
1.9 The arbitration award shall be made and delivered in accordance with Section 682.09 of the Florida Arbitration Code, and shall be delivered to the parties and their counsel no later than thirty (30) days following the conclusion of the arbitration. The award shall set forth in detail the arbitrator's findings of fact and conclusions of law.
2.0 The arbitrator's award shall be final and binding without the right of appeal except as may be provided under Florida law.
2.1 The arbitrator's fees and costs associated with the arbitration shall be paid by the Facility except in the case of a dispute involving non-payment of Facility charges. If the dispute involves non-payment of charges, the arbitrator's fees and costs associated with the arbitration will be divided equally between the parties. The parties shall bear their own attorney's fees and costs and hereby expressly waive any statutory right to recover attorney fees or costs, including under Florida Statutes § 400.023 § 400.029 and § 57.105 and Proposals for Settlement.
2.2 The parties agree to maintain the confidentiality of the arbitration proceeding in all respects, including all arbitration filings, depositions, deposition transcripts, documents produced or obtained in discovery, or other materials provided by and exchanged between the parties and the arbitrator's award, findings of fact and conclusions of law. In addition, following receipt of the arbitrator's award, each party agrees to return to the producing party within 30 days the original documents exchanged in discovery and at the arbitration hearing.
2.3 The Limitation of Liability Provision below is incorporated by reference into this Arbitration Agreement.
B. LIMITATION OF LIABILITY PROVISION: Read Carefully Before Signing.

1.1 The parties to this Agreement understand that the purpose of this "Limitation of Liability Provision" is to limit, in advance, each party's liability in relation to this Agreement.
1.2 Liability for any claim brought by a party to this Agreement against the other party, including but not limited to a claim by the Facility for unpaid nursing home charges, or a claim by a Resident, arising out of the care or treatment received by the Resident at the Facility, including, without limitation, claims for medical negligence or violation(s) of Florida Statutes § 400.022, et seq., arising from simple or gross negligence, shall be limited as follows:
1. Net economic damages shall be awardable, including, but not limited to, past and future medical expenses, off-set by any collateral source payments; any outstanding liens shall be satisfied from the damages awarded.
2. Non-economic damages shall be limited to a maximum of $250,000.
3. Interest on unpaid nursing home charges shall not be awarded.
4. Punitive damages shall not be awarded.
The parties hereto each acknowledge that these limitations of liability are fair and reasonable under the circumstances.
C. WITHDRAWAL PERIOD

Each party shall have three (3) business days from the execution of this *109 agreement to cancel the agreement by notifying the other party in writing, by certified mail return receipt requested, of its desire to cancel.

D. NONSEVERABILITY

In the event any provision of this agreement is determined by a court of competent jurisdiction, an arbitrator or arbitrator panel to be unenforceable for any reason, either party may thereafter cancel this agreement by giving-written notice to such effect within 10 days after such determination. Upon such cancellation, any award, ruling or order under this agreement shall be considered null and void and unenforceable.

E. FULL AGREEMENT

This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter of this agreement and supersedes any prior understandings, agreements, or representations by or among the parties, written or oral. ______ I have received a copy of the brochure entitled Voluntary Arbitration Program (Initials) Information publication NCR-MC-22.
______________________________________
Facility Representative /Date
______________________________________
Resident or Guardian /Date
NOTES
[1] In the proceeding below, the parties disputed Ms. Stiehl's authority to execute an arbitration agreement on Ms. Halloran's behalf. The nature of Ms. Stiehl's authority to execute the agreement was not raised in this appeal.
[2] The agreement in this case is expressly governed by the Florida Arbitration Code. To the extent that the federal arbitration code may sometimes apply, a state solution would likely need to address the concerns created by both codes.
[3] See, e.g., Shotts, 988 So.2d at 641 (citing Bland, 927 So.2d at 256). As noted in Bland, this district "eschews the `sliding scale' approach" employed in the First and Fourth Districts, as well as in other states, and instead assesses procedural unconscionability and substantive unconscionability separately. Bland, 927 So.2d at 257 (citing Petsch, 872 So.2d at 265); see also Romano v. Manor Care, Inc., 861 So.2d 59, 62 (Fla. 4th DCA 2003).
[4] Section 1.4 creates a list of arbitration forums, some of which are not actually available. Despite references to AAA arbitration as a possibility in the agreement, that forum is apparently unavailable at this time. See New Port Richey Med. Investors, LLC v. Stern ex rel. Petscher, 14 So.3d 1084 (Fla. 2d DCA 2009). Likewise, given the lifetime tenure of federal judges, the use of a retired federal judge in Pinellas County is illusory.
[5] Even when residents are given ample time and opportunity to review these form contracts, the reality is that the resident is often significantly incapacitated and may not be competent to sign the agreement. A spouse, son, or daughter, relying on a power of attorney to sign for the resident, is often under time constraints to find a safe facility for a loved one during a very emotional time. Thus, in an unregulated market, these circumstances do not lend themselves to the natural creation of a level playing field.
[6] Hopefully, Manor Care will not raise the statute of limitations as a defense.
[7] See Carrington Place of St. Pete, LLC v. Estate of Milo ex rel. Brito, 19 So.3d 340 (Fla. 2d DCA 2009); Gessa, 4 So.3d at 682; Jaylene, Inc. v. Moots, 995 So.2d 566 (Fla. 2d DCA 2008); Shotts, 988 So.2d at 642; Woebse v. Health Care & Ret. Corp. of Am., 977 So.2d 630 (Fla. 2d DCA 2008); Bland, 927 So.2d at 254; Estate of Williams v. Manor Care of Dunedin, Inc., 923 So.2d 615 (Fla. 2d DCA 2006); Ace Am. Ins. Co. v. HCP III of Bradenton, Inc., 913 So.2d 1280 (Fla. 2d DCA 2005); MN MedInvest Co. v. Estate of Nichols ex rel. Nichols, 908 So.2d 1178 (Fla. 2d DCA 2005); Tandem Health Care of St. Petersburg, Inc. v. Whitney, 897 So.2d 531 (Fla. 2d DCA 2005); Germann v. Age Inst. of Fla., Inc., 912 So.2d 590 (Fla. 2d DCA 2005); Eldridge v. Integrated Health Servs., Inc., 805 So.2d 982 (Fla. 2d DCA 2001); Estate of Blanchard v. Cent. Park Lodges (Tarpon Springs), Inc., 805 So.2d 6 (Fla. 2d DCA 2001); Five Points Health Care, Ltd. v. Mallory, 998 So.2d 1180 (Fla. 1st DCA 2008); Slusser v. Life Care Ctrs. of Am., Inc., 977 So.2d 662 (Fla. 4th DCA 2008); Estate of Orlanis v. Oakwood Terrace Skilled Nursing & Rehab. Ctr., 971 So.2d 811 (Fla. 3d DCA 2007); Place at Vero Beach, Inc. v. Hanson, 953 So.2d 773 (Fla. 4th DCA 2007); Fletcher v. Huntington Place Ltd. P'ship, 952 So.2d 1225 (Fla. 5th DCA 2007); Linton, 953 So.2d at 577; Alterra Healthcare Corp. v. Bryant, 937 So.2d 263 (Fla. 4th DCA 2006); Stokes, 935 So.2d at 1242; Prieto v. Healthcare & Ret. Corp. of Am., 919 So.2d 531 (Fla. 3d DCA 2005); Lacey, 918 So.2d at 334; Estate of Agee v. Age Inst. of Fla., Inc., 913 So.2d 1248 (Fla. 1st DCA 2005); Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296 (Fla. 4th DCA 2005); Extendicare Health Servs., Inc. v. Estate of Patterson, 898 So.2d 989 (Fla. 5th DCA 2005); Estate of Etting v. Regents Park at Aventura, Inc., 891 So.2d 558 (Fla. 3d DCA 2004); Richmond Healthcare, Inc. v. Digati, 878 So.2d 388 (Fla. 4th DCA 2004); Five Points Health Care Ltd. v. Alberts, 867 So.2d 520 (Fla. 1st DCA 2004); Algayer v. Health Ctr. of Panama City, Inc., 866 So.2d 75 (Fla. 1st DCA 2003); Romano, 861 So.2d at 61; Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278 (Fla. 1st DCA 2003); Consol. Res. Healthcare Fund I, Ltd. v. Fenelus, 853 So.2d 500 (Fla. 4th DCA 2003); Northport Health Servs. v. Estate of Raidoja, 851 So.2d 234 (Fla. 5th DCA 2003); Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero, 827 So.2d 338 (Fla. 3d DCA 2002).