872 So.2d 259 (2004)
ORKIN EXTERMINATING COMPANY, INC., Rollins, Inc., David Bernstein, individually, and Rick Prothero, individually, Appellants,
v.
Francis D. PETSCH, individually and on behalf of all others similarly situated, Appellee.
No. 2D02-5494.
District Court of Appeal of Florida, Second District.
February 6, 2004.
Rehearing Denied April 22, 2004.
*261 Michael W. Davis, William J. Nissen, and Theodore R. Scarborough of Sidley Austin Brown & Wood, Chicago, IL, and Douglas B. Brown of Rumberger, Kirk & Caldwell, Orlando, for Appellants.
Keith E. Hope of the Hope Law Firm, P.A., Key Biscayne, Daniel Clark of Clark, Charlton & Martino, P.A., Tampa, and George A. Vaka of Vaka, Larson & Johnson, P.A., Tampa, for Appellee.
NORTHCUTT, Judge.
Francis Petsch contracted with Orkin Exterminating Company to inspect his home for termites and treat any infestation. Petsch was unhappy with Orkin's services and initiated a class action against Orkin, Rollins, Inc., David Bernstein, and Rick Prothero (collectively Orkin). Petsch sought, in count I, money damages and attorney's fees under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), § 501.201-.213, Fla. Stat. (2001); in count II, restitution of all money he paid Orkin; and in count III, injunctive relief under FDUTPA and a declaration that the contract's limitation of liability provision was unenforceable.
Pursuant to a contract provision requiring the parties to arbitrate any disputes, Orkin moved to dismiss or stay the proceedings in favor of arbitration. The circuit court denied Orkin's motion, finding the agreement invalid on two grounds: first, the court found that arbitration did not provide a forum in which Petsch could exercise his statutory rights; and second, the court held that the arbitration provision was unconscionable. We agree with Orkin that both of the circuit court's reasons for denying arbitration were erroneous. We reverse and remand with directions to submit Petsch's claims to arbitration.
We review an order denying a motion to compel arbitration de novo. Stacy David, Inc. v. Consuegra, 845 So.2d 303, 306 (Fla. 2d DCA 2003). In determining whether a dispute is subject to arbitration, courts consider: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Id.; see also Flyer Printing Co. v. Hill, 805 So.2d 829, 831 (Fla. 2d DCA 2001). The only issue presented in this case is the validity of the arbitration provision.
We begin our analysis by noting that FDUTPA claims properly may be submitted to arbitration. Aztec Med. Servs., Inc. v. Burger, 792 So.2d 617, 624 (Fla. 4th DCA 2001); Value Car Sales, Inc. v. Bouton, 608 So.2d 860, 861 (Fla. 5th DCA 1992). When considering whether the legislature intended to preclude the submission of FDUTPA claims to arbitration, the Aztec court declared that to do so, "the legislature would have to state such a requirement in unambiguous text." 792 So.2d at 621 (quoting Sharpe v. Lytal & Reiter, Clark, Sharpe, Roca, Fountain, Williams, 702 So.2d 622, 624 (Fla. 4th DCA 1997)). We agree with Aztec that FDUTPA contains no such statement of legislative intent. As such, FDUTPA *262 claims may be heard in an arbitral forum.[1]
But Petsch claims that the specific language of the provision in his contract prohibits him from raising his FDUTPA claim in arbitration. The pertinent part of the arbitration clause states:
[A]ny dispute arising out of or relating to this agreement ... shall be finally resolved by arbitration administered under the commercial arbitration rules of the American Arbitration Association. Furthermore, the parties expressly agree that their mutual rights and obligations and the conduct of any arbitration proceeding shall be controlled by the Federal Arbitration Act. The arbitrator shall give effect to any and all waivers, releases, disclaimers, limitations and other terms and conditions of this agreement. The arbitrator shall consider the legal defenses raised in the arbitration....
Directly following the arbitration clause is a provision entitled "Limitation of Liability." The contested section of that provision states:
Customer expressly waives any claims in any lawsuit, arbitration or legal proceeding against Orkin for breach of contract, negligence, other tort, or violation of any statute, rule or regulation, for loss of use, diminution of value, economic, compensatory, or incidental or consequential damages of any kind, or any exemplary, treble, liquidated, or any type of punitive damages. Customer agrees that under no circumstances shall Orkin be liable for any amount greater than the amount paid by the Customer to Orkin for the termite service to be performed.
(Emphasis supplied).
Petsch reads the limitation of liability provision to preclude him from bringing a FDUTPA cause of action, i.e., "[c]ustomer... waives any claims ... for ... violation of any statute...." He contends that because the agreement requires that the arbitrator "shall give effect to any and all waivers, releases, disclaimers, [and] limitations" contained in the parties' contract, the limitation provision is incorporated into the arbitration clause. Under this interpretation, he cannot pursue his statutory rights in an arbitral forum and, because of that, the arbitration agreement is unenforceable. See, e.g., Flyer Printing, 805 So.2d at 831. The circuit court agreed with Petsch's view.
Petsch's position is reasonable given the poorly worded limitation provision in Orkin's form contract. In the quote above, we have underlined the words that give rise to ambiguity. It is unclear whether the waiver extends to all claims based on causes of action for breach of contract, torts, and statutory violations, or only to claims for certain damages arising from those causes of action. But in this appeal Orkin has conceded that the clause
merely limits the remedies available in any proceeding against Orkin, whether in arbitration or a lawsuit. The provision does not even purport to prevent *263 plaintiff from filing a claim against Orkin under the FDUTPA seeking declaratory and injunctive relief and a refund of the contract price. Put simply, nothing in the limitation of liability provision prevents [Petsch] from asking the arbitrator to hear his FDUTPA claim on the merits, just as a court would.
Reply br. at 4-5.
Both federal and Florida public policy favor resolving disputes through arbitration when the parties have agreed to do so. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); K.P. Meiring Constr., Inc. v. Northbay I & E, Inc., 761 So.2d 1221, 1225 (Fla. 2d DCA 2000). In keeping with this policy, we will construe the Orkin contract, including the arbitration and the limitation provisions, in a way that gives a reasonable meaning to all the terms, rather than in a way that will render part of the contract of no effect. See State Farm Fire & Cas. Co. v. Licea, 685 So.2d 1285, 1287 (Fla.1996). We accept Orkin's assertion that nothing in the arbitration clause or the limitation provision prevents Petsch from raising his FDUTPA claim, or any other claims he may have against Orkin, in the arbitration.
Nor does the limitation provision affect the remedies available for a violation of FDUTPA. Section 501.211(2) provides that anyone who has suffered a loss because of a violation of FDUTPA "may recover actual damages, plus attorney's fees and court costs." Although Petsch sought special, consequential, and incidental damages in count I, those damages are not available under FDUTPA. See Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati, 715 So.2d 311, 314-15 (Fla. 4th DCA 1998). Section 501.211 permits a consumer to recover only the diminished value of the services received. Urling v. Helms Exterminators, Inc., 468 So.2d 451, 454 (Fla. 1st DCA 1985). Thus, in the context of an improper termite inspection, the Urling court noted that the plaintiff could only recover the cost of the erroneous certificate. Petsch's damages under FDUTPA would be recovery of the amount he paid under his contract with Orkin, plus his fees and costs. Such recovery is permitted under the limitation of liability provision in the contract.
As to attorney's fees, both the arbitration clause and limitation provision are silent. Petsch has sought attorney's fees which are authorized under section 501.211(2). While the limitation provision states that Orkin will not be "liable" for any amount greater than the amount Petsch paid it, we read this condition in conjunction with the sentence before it, which imposes a limitation on the damages awardable. Attorney's fees are not damages. Scottsdale Ins. Co. v. Haynes, 793 So.2d 1006, 1009 (Fla. 5th DCA 2001), review denied by Home Away From Home of Holly Hill, Inc. v. Scottsdale Ins. Co., 819 So.2d 135 (Fla.2002); see also Cheek v. McGowan Elec. Supply Co., 511 So.2d 977 (Fla.1987).
We note that even when the Federal Arbitration Act governs an arbitration agreement, Florida law controls the award of attorney's fees. Lee v. Smith Barney, Harris Upham & Co., 626 So.2d 969, 971 (Fla. 2d DCA 1993); see also Cassedy v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 751 So.2d 143, 146-47 (Fla. 1st DCA 2000). The Florida Arbitration Code, § 682.11, Fla. Stat. (2001), states that "[u]nless otherwise provided in the agreement or provision for arbitration, the arbitrators' and umpire's expenses and fees, together with other expenses, not including counsel's fees, incurred in the conduct of the arbitration, shall be paid as provided in the award." (Emphasis supplied). Attorney's *264 fees for time spent in arbitration are recoverable only in the circuit court on a motion for confirmation or enforcement of the award. Lee, 626 So.2d at 970; see also Moser v. Barron Chase Sec., Inc., 783 So.2d 231, 232-233 (Fla.2001) (stating that section 682.11 "has been construed to vest jurisdiction for the award of attorney's fees in the circuit court"). If Petsch prevails on his FDUTPA claim, which authorizes attorney's fees, he may seek an award of such fees from the circuit court, or the parties may waive their right to have the circuit court decide the issue and agree that the arbitrator may do so. See Moser, 783 So.2d at 233.
In count III, Petsch also seeks injunctive relief under FDUTPA. Section 501.211(1) authorizes injunctive relief, even if that relief does not benefit the customer who filed the suit. Davis v. Powertel, Inc., 776 So.2d 971, 975 (Fla. 1st DCA 2000). Recently we held that an arbitration agreement was unenforceable when the agreement did not permit a customer to seek injunctive relief in arbitration of a FDUTPA claim. Holt v. O'Brien Imports of Fort Myers, Inc., 862 So.2d 87 (Fla. 2d DCA 2003). But in that case the arbitration provision only authorized an award of damages, fees, and costs. Id.; see also Powertel, Inc. v. Bexley, 743 So.2d 570, 576 (Fla. 1st DCA 1999) ("The arbitration clause expressly limits Powertel's liability to actual damages...."). Generally, unless prohibited from doing so, arbitrators have the power to fashion equitable remedies. See Gilmer, 500 U.S. at 32, 111 S.Ct. 1647; Stewart Agency, Inc. v. Robinson, 855 So.2d 726, 728 (Fla. 4th DCA 2003). Like the agreement in Robinson, Petsch's agreement with Orkin does not prohibit the arbitrator from awarding injunctive relief. Moreover, the rules of the American Arbitration Association, which govern the arbitration in this case, permit the arbitrator to award such relief.[2]
The circuit court erred in determining that Petsch could not vindicate his statutory rights in the arbitral forum. We do not fault the court for its conclusion, however, because of the imprecise language contained in the limitation provision. And we note that in future proceedings Orkin will be bound by the construction of the limitation of liability provision it has advanced in this appeal.
The circuit court also refused to enforce the arbitration clause because it found the clause was unconscionable. This is a question of state law; while the parties do not dispute that their contract is governed by the FAA, state law is applicable "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); see also 9 U.S.C. § 2 (declaring that written provisions for arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). In Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), the Court noted that generally applicable contract defenses under state law, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening section 2 of the FAA. See also Powertel, 743 So.2d at 573-74. Thus, we look to Florida law to determine unconscionability.
For a contractual provision to be voided, it must be both procedurally and substantively unconscionable. See Eldridge *265 v. Integrated Health Servs. Inc., 805 So.2d 982 (Fla. 2d DCA 2001); Powertel, 743 So.2d at 574. The circuit court in this case found the arbitration provision was a contract of adhesion and, therefore, procedurally unconscionable. It declared the provision substantively unconscionable because it limited Petsch's damages and forced him to waive statutory remedies. The court relied on Powertel for both propositions. But the facts here are materially distinguishable from those underpinning the decision in Powertel. We conclude that the arbitration provision in the contract before us is not unconscionable.
The procedural component of unconscionability concerns the manner in which the contract was entered. It involves consideration of facts such as the relative bargaining power of the parties and their ability to understand the contract terms. For example, a court could find a contract procedurally unconscionable if important terms were "hidden in a maze of fine print." Powertel, 743 So.2d at 574 (internal citations omitted). The agreement in Powertel was, without question, procedurally unconscionable. Powertel, a cellular service provider, attempted to modify its contracts with customers after the fact, by including an insert in the customer's bill stating the terms of the existing contracts would be changed to add an arbitration provision as of a certain date. If the customer continued to use the cellular service, he or she was deemed to have accepted the new contract terms. "The customers did not bargain for the arbitration clause, nor did they have the power to reject it. One of the hallmarks of procedural unconscionability is the absence of any meaningful choice on the part of the consumer." Id. at 575. Powertel's customers had no choice but to agree to the new arbitration clause if they wished to continue to use the cellular telephone plans they had already purchased.
But here, the arbitration provision was contained in the original contract between the parties. It was in large type on the first page of the agreement, not buried in a maze of fine print. While it was a preprinted provision, we cannot agree with the circuit court's finding that it was a contract of adhesion. The Powertel court defined an adhesion contract as a standardized form offered on a "`take it or leave it' basis without affording [the] customer [a] realistic opportunity to bargain" and under such conditions that the customer "cannot obtain [the] desired product or services except by acquiescing in the form contract." Id. at 574. Here, Petsch does not argue, nor does any evidence support, the proposition that he was forced to contract with Orkin on a "take it or leave it basis" or that he could not have obtained termite services for his home without acquiescing to Orkin's terms. See Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 281 (Fla. 1st DCA 2003). The arbitration provision is not procedurally unconscionable.
Under Eldridge, 805 So.2d at 982, our decision that the provision was not procedurally unconscionable effectively ends our inquiry. But we note that some courts use a balancing approach to the questionif the contract is substantively unconscionable to a great degree, and some quantum of procedural unconscionability exists, the contract is unenforceable. See Romano ex rel. Romano v. Manor Care, Inc., 861 So.2d 59, 60-63 (Fla. 4th DCA 2003); Kohl v. Bay Colony Club Condo., Inc., 398 So.2d 865, 868 (Fla. 4th DCA 1981). But, as discussed in the first part of this opinion, the arbitration clause in Petsch's contract does not preclude him from raising his statutory claims in arbitration. Neither does it limit the statutory damages available *266 for a FDUTPA violation. In any event, Orkin has acknowledged that the arbitrator has the power to declare the limitation of remedies unenforceable. Thus, Petsch may challenge the limitation provision in arbitration. Therefore, the arbitration provision is not substantively unconscionable, and even under the Fourth District's approach, the contract is enforceable.
Finally, we note that Petsch filed his suit as a class action. The FAA and the rules of the American Arbitration Association permit arbitrators to decide whether class actions may be arbitrated under a particular contractual provision. See Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, ___, 123 S.Ct. 2402, 2407, 156 L.Ed.2d 414 (2003); American Arbitration Association, Supplementary Rules for Class Arbitration. Because we are remanding for arbitration, we leave this issue for the arbitrator to decide.
In summary, we hold that the arbitration agreement between Petsch and Orkin does not preclude Petsch from raising any causes of action in an arbitral forum. Nor is the provision unconscionable. We reverse the order denying Orkin's motion to dismiss or stay the circuit court action pending arbitration. We remand with directions to refer Petsch's claims to arbitration.
COVINGTON and CANADY, JJ., Concur.
NOTES
[1] Because of our resolution of this issue, we need not address Orkin's argument that, in cases subject to the Federal Arbitration Act, the intent of a state legislature is not a relevant consideration in deciding whether state statutory claims are arbitrable. Orkin argues that the FAA policy favoring enforcement of contractual arbitration must be honored "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Thus, Orkin claims only Congress's intent to preclude arbitration, not the intent of a state legislature, may be examined. The parties do not dispute the FAA's applicability to this case. But because we have determined that FDUTPA claims are arbitrable, we leave this question for another day.
[2] See Rules of the American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, rule 43. The rules can be found at www.adr.org.