SILBERMAN, Judge.
Zephyr Haven Health & Rehab Center, Inc., and the other named appellants (all appellants are collectively referred to as *919 “the Owners”) challenge the trial court’s order denying their motion to compel arbitration of Edna Hardin’s claims against them. Because Hardin failed to establish that the arbitration agreement should not be enforced, we reverse.
I. Factual and Procedural Background
Hardin was admitted to the Owners’ nursing facility on November 9, 2010. Two days later, she signed admissions documents, including an arbitration agreement. The arbitration agreement was conspicuously labeled and specified that its execution was not a precondition to receiving care at the nursing facility. It further specified that in any arbitration proceeding, the nursing facility would pay the first $500 of arbitration fees and costs and that all additional expenses would be split with the nursing facility responsible for 60% and Hardin responsible for 40%. The agreement provided that the parties would be responsible for their own attorney’s fees.
One year later Hardin sued the Owners, alleging a variety of claims arising out of the care she received at the nursing facility. The Owners responded with a motion to dismiss the complaint and to compel arbitration. At a hearing on the motion, the Owners submitted the arbitration agreement into evidence and argued that the agreement required arbitration of Hardin’s claims. Hardin responded that although there was no dispute that she signed the agreement, it would be impossible for her to perform under the agreement because she could not afford to pay 40 percent of the arbitration expenses. She provided to the trial court several invoices from unrelated arbitration proceedings. Although the invoices do not appear to have been admitted into evidence, Hardin argued that they were examples of the fees and costs that could be incurred in arbitration. Hardin also presented testimony from her stepson, who served as her caretaker, regarding her strained finances. No other evidence was presented.
Argument at the hearing largely addressed the doctrines of impossibility of performance and unconscionability. Although Hardin asserted that the issue was one of impossibility, the Owners maintained the matter should be analyzed instead under the doctrine of unconsciona-bility. After the hearing, the trial court issued an order denying the motion to compel arbitration. The order found both that it was “financially impossible” for Hardin to participate in arbitration and that if Hardin “were forced to pay 40 percent of arbitration costs, based on her income and her expenses, the amount would be unconscionable.”
In this appeal, the Owners challenge the sufficiency of the evidence presented to the trial court and the court’s findings that the arbitration agreement was unconscionable and impossible for Hardin to perform.[1] Furthermore, the parties dispute the application of the United States Supreme Court’s holding in Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Our review of the trial court’s factual findings is to determine whether those findings are supported by competent, substantial evidence; our review regarding the validity of the agreement and the trial court’s application of the law to the facts is de novo. Woebse v. Health Care & Ret. Corp. of Am., 977 So.2d 630, 632 (Fla. 2d DCA 2008); Stacy David, Inc. *920 v. Consuegra, 845 So.2d 303, 306 (Fla. 2d DCA 2003).
II. Unconscionability
To succeed in claiming that a contractual provision is unconscionable, a party must demonstrate both procedural and substantive unconscionability. Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 264 (Fla. 2d DCA 2004). Procedural unconscionability addresses “the manner in which the contract was entered,” including “consideration of facts such as the relative bargaining power of the parties and their ability to understand the contract terms.” Id. at 265. Substantive un-conscionability, on the other hand, requires assessment of the contract’s terms to “determine whether they are so ‘outrageously unfair’ as to ‘shock the judicial conscience.’ ” Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 284-85 (Fla. 1st DCA 2003) (quoting Belcher v. Kier, 558 So.2d 1039, 1043 (Fla. 2d DCA 1990)). Where the party alleging unconscionability establishes only one of the two prongs, the claim fails. See, e.g., Eldridge v. Integrated Health Servs., Inc., 805 So.2d 982, 982 (Fla. 2d DCA 2001) (“[W]e do not reach the issue of substantive unconscionability because [the appellant] failed to establish the necessary element of procedural un-conscionability.”).
In the context of unconscionability, the issue of the financial cost of arbitration is generally considered substantive, rather than procedural. See Stewart Agency, Inc. v. Robinson, 855 So.2d 726, 728 (Fla. 4th DCA 2003). Hardin’s alleged inability to pay that cost was the basis of her opposition to the motion to compel arbitration. Thus, while she addressed substantive unconscionability, she failed to present evidence of procedural unconscion-ability. Accordingly, to the extent the trial court determined that the agreement is unenforceable based on unconscionability, it erred.
III. Impossibility of Performance
Impossibility of performance “is a defense to nonperformance and refers to situations where the purpose for which the contract was made has become impossible to perform.” Spring Lake NC, LLC v. Figueroa, 104 So.3d 1211, 1216 (Fla. 2d DCA 2012). When determining impossibility, courts focus on “ ‘whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract.’ ” Ferguson v. Ferguson, 54 So.3d 553, 556 (Fla. 3d DCA 2011) (quoting 6 Williston, Contracts (Rev. ed.) § 1931 (1938)). Where the risk was foreseeable when the agreement was made and could have been expressly addressed in the agreement, “[t]he doctrine of impossibility of performance should be employed with great caution.” Am. Aviation, Inc. v. Aero-Flight Serv., Inc., 712 So.2d 809, 810 (Fla. 4th DCA 1998).
Even where performance actually becomes impossible after execution of the agreement, the doctrine cannot be invoked as a defense if “knowledge of the facts making performance impossible” was available at the inception of the agreement to the party claiming impossibility. Id. (citing Shore Inv. Co. v. Hotel Trinidad, 158 Fla. 682, 29 So.2d 696 (1947)). In the specific context of arbitration, courts are “not empowered to rewrite a clear and unambiguous provision, nor should [they] attempt to make an otherwise valid contract more reasonable for one of the parties.” N. Am. Van Lines v. Collyer, 616 So.2d 177, 179 (Fla. 5th DCA 1993). Further, “unexpected difficulty or expense will not excuse a party to a contract from *921 performance” of an agreement to arbitrate. Id.
After reviewing the evidence submitted to the trial court and the applicable law, we cannot uphold the trial court’s decision to deny the motion to compel arbitration on the basis of financial impossibility. First, Hardin failed to establish that performance was impossible. Hardin’s stepson testified that her monthly income was approximately $3000 but that the monthly cost of her care exceeded that amount. However, he added that although paying the costs of arbitration would create a financial hardship, Hardin could receive care in a nursing home through “taxpayer dollars” rather than out-of-pocket spending. While it is understandable that Hardin may consider this option less desirable than private care, its existence undermines her effort to establish financial impossibility.
Second, the evidence indicated that Hardin’s costs for care were significantly reduced at the time of the hearing as compared to what she had been paying when she was in the nursing facility. Thus, she did not establish an adverse change in circumstances from the time she entered into the agreement to the time the issue was presented to the trial court. Consequently, to the extent the trial court determined the agreement is unenforceable due to financial impossibility, we reverse.
IV. The Green Tree Prohibitive Cost Defense
Below and on appeal, the parties have also addressed a third defense which has been developing since’ the United States Supreme Court’s opinion in Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). In Green Tree, the Supreme Court considered a party’s argument that an arbitration agreement’s silence as to costs and fees forced her to forego bringing her federal statutory claims due to the potentially prohibitive costs of pursuing them. 531 U.S. at 90, 121 S.Ct. 513. The Court reiterated that arbitration agreements are enforceable even as to statutory claims “ ‘so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum.’ ” Id. (alteration in original) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)).
But the Court also acknowledged that large arbitration costs can preclude litigants from vindicating their rights through arbitration. Id. To that end, the Court held that where “a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.” Id. at 92. The Court specifically declined to address, however, “[h]ow detailed the showing of prohibitive expense must be.” Id.
Federal and state courts around the country have struggled in applying this burden. See, e.g., Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 657-65 (6th Cir.2003) (discussing various approaches in applying the Green Tree standard to cost-splitting provisions in arbitration agreements). But the analysis in the seminal case of Bradford v. Rockwell Semiconductor Systems, Inc., 238 F.3d 549 (4th Cir. 2001), has gained some traction. Bradford addressed whether fee-splitting provisions in employment contracts necessarily render arbitration agreements unenforceable by deterring plaintiffs from bringing claims. Citing Green Tree, the Fourth Circuit acknowledged that there exists a threshold where the costs of arbitration in a fee-splitting agreement can become prohibitive and render the agreement unen *922 forceable by denying the plaintiff access to the forum. Id. at 554. But the court rejected the argument that fee-splitting provisions are per se unenforceable. Instead, it held that a case-by-case analysis is appropriate, focusing, “among other things, upon the claimant’s ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims.” Id. at 556.
We are persuaded that this approach is correct. As the Bradford opinion observed, this analysis is consistent with Green Tree, requiring the litigant to make “some showing of individualized prohibitive expense ... to invalidate an arbitration agreement on the ground that fee splitting would be prohibitively expensive.” Bradford, 238 F.3d at 557. This approach has also been adopted by the Eleventh Circuit. See Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1259-60 (11th Cir.2003) (citing the test from Bradford and noting that “[ujnder Green Tree, Mus-nick has an obligation to offer evidence of the amount of fees he is likely to incur, as well as of his inability to pay those fees”). Furthermore, the Fourth and Fifth Districts have interpreted Green Tree to require an evidentiary showing of at least the expected cost of arbitrating the specific claim. See Fi-Evergreen Woods, LLC v. Estate of Vrastil, 38 Fla. L. Weekly D1710, D1711-12 (Fla. 5th DCA Aug.16, 2013) (determining that an arbitration fee schedule and unauthenticated fee statements from similar but unrelated cases are insufficient to meet the requisite burden); Stewart Agency, 855 So.2d at 728-29 (“There is nothing to show that the expense of arbitration is greater than the expense of litigating the issues or would prevent the appellee from vindicating her statutory rights.”).
Here, Hardin has not met her burden under Green Tree. First, she has not presented evidence of the likely cost of arbitrating her claim. The invoices Hardin referred to were for unknown claims and do not establish what she could expect to incur if forced to arbitrate this matter. Second, even if Hardin’s evidence had addressed the cost of arbitrating this specific claim, she did not attempt to compare that cost with what she would pay in litigation. She is correct that fees would be required to pay an arbitrator (or, under the agreement, more than one arbitrator if the parties could not agree on one arbitrator) while no fees would be paid to a judge. But she presented no evidence, and therefore failed to carry her burden, to show that her likely expenses in arbitration would exceed her likely expenses in litigation.[2] See Stewart Agency, 855 So.2d at 728-29.
Finally, we note that it is not clear from the record that Hardin would be required to pay anything at all if the matter pro *923 ceeded to arbitration. During cross-examination of Hardin’s stepson, the Owners sought to inquire into the financial arrangements between Hardin and her lawyer. Hardin objected based on the attorney-client privilege. The Owners argued that, customarily, a plaintiff in a case such as this one is represented by an attorney on a contingency fee basis, with the plaintiffs attorney advancing the expenses to prepare and try the case. The Owners asserted that the arbitration agreement must be upheld absent evidence as to the costs Hardin herself would likely incur and for which she claimed she could not make payment. The Owners submitted that to the extent Hardin contended that the arbitration expenses would be borne directly by her and that she was unable to pay them, then the Owners should be permitted to engage in discovery to determine the accuracy of those contentions.
Hardin’s attorney did not respond directly to the contention that the law firm was representing Hardin under a contingency fee arrangement, maintaining that the fee agreement was protected by the attorney-client privilege. But the attorney stated that if the case proceeded to arbitration, the firm would not represent Hardin and Hardin would have to bear the costs of arbitration.[3] The attorney then reiterated that the firm should not have to pay an arbitrator when it does not have to pay for a judge to be a decision-maker. The trial court sustained Hardin’s objection based on attorney-client privilege.
To the extent Hardin has maintained that the costs of arbitrating her claim were prohibitively expensive, it was her burden to prove “the likelihood of incurring such costs.” Green Tree, 531 U.S. at 92, 121 S.Ct. 513. The Owners argued, in essence, that if Hardin’s attorneys were representing her on a contingency basis, advancing all costs and recouping them solely from any recovery, then this burden has not been met. Hardin did not refute that contention or present authority that such an analysis is irrelevant to the issue. Instead, she baldly asserted that the attorney-client privilege protected the payment arrangement. This attempt to use the payment arrangement as both a sword and a shield must fail. Even assuming that the fee agreement contains privileged material, that information could be redacted and the billing information could be produced to substantiate Hardin’s claim. See Finol v. Finol, 869 So.2d 666, 666 (Fla. 4th DCA 2004). Consequently, Hardin failed to carry her burden under Green Tree.
V. Conclusion
Because the trial court’s findings are unsupported by the record, it erred in denying the motion to arbitrate. Accordingly, the trial court’s order is reversed, and we remand with directions that an order be entered compelling arbitration.
Reversed and remanded.
VILLANTI and MORRIS, JJ„ Concur.

. We note that the parties have not addressed in the trial court or in their briefs the possible effect of a severability provision contained in the arbitration agreement.

. In so concluding, we have not overlooked the potential impact of the Supreme Court’s recent opinion in American Express Co. v. Italian Colors Restaurant, - U.S. -, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013). In considering whether to enforce a contractual waiver of class arbitration, the Court cited Green Tree, acknowledging once more that the "effective vindication” exception may apply to "filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable.” Id. at 2310-11. The Court noted that "the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy.” Id. at 2311. This language could be read to narrow the evidentiary scope of the Green Tree analysis to exclude from consideration the portion of expenses attributed to proving a claim, leaving only those involved in pursuing it. But this distinction is immaterial where, as here, the plaintiff's evidence is insufficient to establish the cost of either.

. This argument assumes that no other law firm would represent Hardin and advance the necessary expenses. No evidence was offered in support of this argument.