VILLANTI, Judge.
FI-Tampa, LLC, and the other named appellants (collectively referred to as FI-Tampa) appeal the nonfinal order of the trial court denying their motion to compel arbitration. Cynthia T. Kelly-Hall, as personal representative of the Estate of Altamese M. Kelly (the Estate) filed a three-count complaint in circuit court. Count one alleged nonlethal negligence damages; count two alleged lethal negligence damages; and count three alleged a wrongful death cause of action. FI-Tampa filed a motion to compel arbitration pursuant to the arbitration agreement that Al-tamese Kelly (Kelly) signed when she was admitted to the Rehab and Healthcare Center of Tampa nursing home. The trial court, after conducting a hearing, entered an order denying the motion. Because we conclude that there was a valid written agreement to arbitrate, we reverse the order on appeal and remand with directions to the trial court to enter an order compelling arbitration.
The complaint alleged that Kelly was admitted into the FI-Tampa operated nursing home in July 2011. Three days later, she signed the admissions paperwork, including the arbitration agreement at issue (the Agreement). The Agreement states that both the resident and the facility are giving up the right to go to a court of law for, inter alia, all negligence, tort, or statutory claims, and that such disputes will be resolved by binding arbitration. Although each party is required to pay its own attorney’s fees and any expenses associated with producing witnesses, the costs of the arbitration are to be borne equally by the parties. The Agreement sets forth the following in regard to the administration of the arbitration:
At the option of either the party commencing arbitration or by stipulation of the parties, the arbitration shall be administered pursuant to the procedures of the American Arbitration Association (“AAA”) under its Commercial Arbitration Rules or pursuant to the procedures of JAMS[1] under its Comprehensive Arbitration Rules and Procedures in effect at the time of the arbitration.... If either AAA or JAMS are unable or unwilling to serve as administrator, the parties shall select another independent and impartial entity that is regularly engaged in providing arbitration services to serve as administrator.
(Footnote added.)
In opposition to the motion to compel arbitration, the Estate submitted the sworn affidavit of the personal representative averring that the Estate had no assets and that it could not afford to pay any arbitration fees whatsoever. The Estate also submitted a copy of AAA’s Healthcare Policy Statement indicating that after Jan *566 uary 1, 2003, it would no longer accept the administration of cases involving individual patients without a postdispute agreement to arbitrate. Additionally, the Estate submitted copies of JAMS’ procedures, which require the payment of fees prior to the arbitration, otherwise the proceedings could be suspended or terminated. If a party does not pay the fees and expenses prior to the hearing, that party could be prohibited from offering evidence of an affirmative claim.
No other evidence or witness testimony was presented at the hearing on the motion to compel arbitration. The parties relied on the Agreement itself and the items submitted by the Estate. Fl-Tampa argued that Kelly entered into a valid arbitration agreement which was not unconscionable, nor was it in violation of public policy. The Estate contended that the Agreement violated public policy because it provided that the arbitration fees be borne equally. Although the Estate presented this argument in terms of a public policy violation, the underlying premise was that in this particular instance arbitration would be prohibitively expensive. The Estate also contended that the terms of the Agreement were impossible to perform because AAA would no longer accept the administration of cases involving an individual patient without a postdispute agreement to arbitrate.
The written order denying the motion to compel arbitration contained no findings. However, following the argument of the parties at the hearing, the trial court made the following oral findings:
I am very persuaded by ... the fact that an affidavit had been submitted by the ... personal representative.... It’s a short affidavit, and basically she says that the estate of Altamese Kelly has assets in the amount of zero dollars.
And based on that, based on the dicta in the Supreme Court of the United States opinion and on the other case that counsel cited and on the impossibility of AAA doing it, I’m going to deny the motion to compel arbitration.
The United States Supreme Court case the trial court referred to was Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), wherein the Court acknowledged in dicta that “[i]t may well be that the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum.” Apparently based on this dicta, the trial court orally denied the motion to compel arbitration on the ground that arbitration would be prohibitively expensive for the Estate. It also denied the motion on the basis of impossibility of performance.
On appeal, Fl-Tampa first contends that the trial court failed to undertake a proper unconscionability analysis. The court in Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999), held:
Under both federal statutoi*y provisions and Florida’s arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitra-ble issue exists; and (3) whether the right to arbitration was waived.
If an arbitration agreement were unconscionable, it would not pass the first element of the Seifert test because the agreement would not be a valid one. This court in Zephyr Haven Health & Rehab Center, Inc. v. Hardin, 122 So.3d 916, 920 (Fla. 2d DCA 2013),[2] stated:
*567 To succeed in claiming that a contractual provision is unconscionable, a party must demonstrate both procedural and substantive unconscionability. Orlan Exterminating Co. v. Petch, 872 So.2d 259, 264 (Fla. 2d DCA 2004). Procedural unconscionability addresses “the manner in which the contract was entered,” including “consideration of facts such as the relative bargaining power of the parties and their ability to understand the contract terms.” Id. at 265. Substantive unconscionability, on the other hand, requires assessment of the contract’s terms to “determine whether they are so ‘outrageously unfair’ as to ‘shock the judicial conscience.’ ” Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 284-85 (Fla. 1st DCA 2008) (quoting Belcher v. Kier, 558 So.2d 1039, 1048 (Fla. 2d DCA 1990)). Where the party alleging unconsciona-bility establishes only one of the two prongs, the claim fails.
Importantly here, the Estate did not argue below that the arbitration agreement was unconscionable, and it presented no evidence whatsoever of procedural uncon-scionability. Although the Estate’s claim that it was unable to pay the financial costs of arbitration could be considered under the substantive unconscionability prong, see id., it would be difficult to establish that a term in an arbitration agreement which requires that the costs of arbitration be borne equally by the parties, standing alone, is so outrageously unfair as to shock the judicial conscience.
Nevertheless, in denying the motion to compel arbitration, the trial court orally found that the cost of arbitration was prohibitively expensive for the Estate. Although the costs of arbitration may be a basis for determining that an agreement to arbitrate is substantially unconscionable, since Green Tree the issue of the prohibitive costs of arbitration has developed into a separate defense to the enforcement of an arbitration agreement. See Zephyr Haven, 122 So.3d at 921-22. “[W]here ‘a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.’ ” Id. at 921 (quoting Green Tree, 531 U.S. at 92, 121 S.Ct. 513). In determining whether the costs of arbitration in a fee splitting arrangement are so prohibitive as to render the agreement unenforceable because it denies the plaintiff access to the arbitral forum, a case-by-case analysis is appropriate. Id. at 922. The focus is on the claimant’s ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigating in court, and whether the cost differential is so substantial as to deter the bringing of the claims. Id. In order to invalidate the arbitration agreement, the plaintiff, at an evidentiary hearing, must show the expected cost of arbitrating the specific claim is greater than litigating it and that the cost of arbitration would be prohibitively expensive. Id.
The court in Zephyr Haven reversed the order of the trial court denying the motion to compel arbitration and remanded with directions to compel arbitration. Id. at 923. The court determined that Hardin, the plaintiff nursing home patient, had not met her burden under Green Tree because she did not establish that the likely expense of arbitration would exceed the likely expense of litigation. Id. at 922. The court also noted that Hardin did not refute *568 the contention that she was being represented on a contingency basis with counsel advancing all costs, nor did she present authority that this would not be relevant to the issue of whether the costs of arbitration were prohibitively expensive. Id. at 923.
In this case, the Estate presented evidence only of JAMS’ fee schedule, but no evidence of the expected cost of arbitrating its specific claims or the expected cost of litigation. The self-serving affidavit of the personal representative averred that the Estate “cannot afford to pay any arbitrator fees whatsoever.” Yet the Estate was litigating in the trial court and was represented by counsel when it sought to set aside the arbitration agreement. As in Zephyr Haven, the Estate did not refute Fl-Tampa’s contention that it was being represented on a contingency basis with counsel advancing all costs. We therefore conclude that the Estate did not meet its affirmative burden of establishing that the costs of arbitration would likely exceed the costs of litigation and that the costs of arbitration were prohibitively expensive in this instance.
The Estate also argued at the motion hearing, and further contends on appeal, that the Agreement violated public policy. However, the trial court did not orally find that the Agreement violated public policy, and it clearly does not. The court in Shotts v. OP Winter Haven, Inc., 86 So.3d 456, 464-65 (Fla.2011), concluded that “if an arbitration agreement violates public policy, no valid agreement exists.” In that ease, as in this case, the plaintiff filed a complaint alleging negligence on the part of the defendant nursing home. Id. at 458. The court held that the arbitration agreement was against public policy because it effectively limited certain statutory remedies created by the Legislature to protect the rights of nursing home residents. Id. at 473. The arbitration agreement in Shotts stated that the arbitrators had no authority to award punitive damages. Id. at 471. On its face, this eroded access to specific statutory remedies provided by sections 400.022 and 400.023, Florida Statutes (2003). Id. at 474.
In the present case, the Agreement did not limit any specific statutory remedies created by the Legislature. The Estate contends that the Agreement violated public policy because the costs of arbitration prohibited Kelly from effectively vindicating her statutory rights. The Supreme Court, in citing to Green Tree for the principle that the existence of large arbitration costs could preclude a litigant from effectively vindicating her statutory rights, noted that “the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy.” Am. Express Co. v. Italian Colors Rest., — U.S. -, 133 S.Ct. 2304, 2311, 186 L.Ed.2d 417 (2013). In this case, no evidence whatsoever was elicited to show that the costs of arbitration were so clearly prohibitive as to prevent any resident of the nursing home from pursuing her statutory remedies. An arbitration agreement that violates public policy typically would limit the statutory remedies of all the nursing home residents bound by the agreement, not just the remedies of a particular resident based on her economic circumstance. Thus, standing alone, the fact that a particular litigant cannot afford to arbitrate her claims does not establish that an arbitration agreement, which requires cost sharing and the payment of costs prior to the hearing, violates public policy. Inarguably, all of the statutory remedies provided by section 400.023, Florida Statutes (2011), are still available to the Estate in the arbitral forum.
*569 Finally, as noted above, the trial court also orally ruled that the Agreement was impossible to perform based on AAA’s Health Care Policy Statement that it does not accept the administration of cases involving individual patients unless there is a postdispute agreement to arbitrate. However, as noted in Zephyr Haven, impossibility of performance is a defense to nonperformance and refers to situations where the purpose for which the contract was made has become impossible to perform. Id. at 920. Here, there has been no showing that it is impossible to arbitrate the Estate’s claims because of AAA’s Healthcare Policy Statement. Furthermore, the Agreement states only that the arbitration be administered pursuant to the procedures of AAA or JAMS, not that one of the two must conduct the arbitration procedure. There was no evidence presented at the hearing to establish that JAMS was not available to conduct the proceedings, neither was there any evidence to establish that another entity that conducts arbitrations could not do so in accordance with AAA procedures. Therefore, it is still possible to arbitrate the claims raised by the Estate under the terms of the arbitration agreement. Accordingly, whether the issue is framed in terms of an unconscionability analysis, a Green Tree prohibitive cost analysis, or one of impossibility of performance, the trial court properly considered the arguments raised by the parties but erred in denying the motion to compel arbitration.
Reversed and remanded with directions to the trial court to enter an order compelling arbitration.
NORTHCUTT and WALLACE, JJ., Concur.

1. "JAMS” is an acronym for Judicial Arbitration and Mediation Services.

. In fairness to the trial court, we note that this court’s opinion in Zephyr Haven, which *567 considered unconscionability, the prohibitive cost of arbitration, and impossibility of performance as defenses to the enforcement of an arbitration agreement, issued subsequently to the issuance of the order on appeal in this case.