**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Terry Putman, Individually and as Personal Representative of the Estate of Margaret Hensley, Respondent,

v.

White Oak Estates, Inc., White Oak Management, Inc., and White Oak Manor, Inc., Appellants.

Appellate Case No. 2021-000681

———————

Appeal From Spartanburg County
Grace Gilchrist Knie, Circuit Court Judge

———————

Unpublished Opinion No. 2024-UP-278
Submitted June 1, 2024 – Filed July 24, 2024

———————

**AFFIRMED**

———————

Joshua Tate Thompson, of Boulier Thompson & Barnes, LLC, of Spartanburg for Appellants.

Matthew W. Christian, of Christian & Christian, LLC, of Greenville, and Jordan Christopher Calloway, of McGowan Hood Felder & Phillips, of Rock Hill, for Respondent.

———————

**PER CURIAM:** In this wrongful death and survival action alleging nursing home negligence, White Oak Estates, Inc., White Oak Management, Inc., and White Oak Manor, Inc. (collectively, Appellants) argue the circuit court erred in denying its Motion to Dismiss, Motion to Compel Arbitration, and Motion for a Protective Order or, alternatively, a Motion to Stay the action pending arbitration. We affirm.

**FACTS**

Margaret Hensley (Ms. Hensley) granted Terry Putman (Daughter) a comprehensive Durable Power of Attorney (POA) on October 7, 2011. In August 2017, Ms. Hensley was admitted to White Oak Estates (the Facility) for a short-term rehabilitative stay after undergoing a hip arthroplasty at Spartanburg Regional Medical Center. At the time of admission, Ms. Hensley had an articulating brace for her leg to keep it immobilized as a result of the hip surgery. There was a skin abrasion below the edge of the brace. Ms. Hensley died on September 25, 2017 from complications arising from an infection in the wound.

Prior to Ms. Hensley's admission, Daughter signed an Admission Agreement and an Arbitration Agreement presented to her by agents of the Facility. The Arbitration Agreement provides three arbitrators will be on the panel to hear the case. However, two of the arbitrators do not have to be attorneys or have any experience with the subject matter or legal issues. The arbitrators may be anyone the party knows at the time, with few exceptions. Each party is entitled to choose one arbitrator. If the arbitrator chosen by Daughter and the arbitrator chosen by the Facility cannot agree upon a third arbitrator, a coin toss will determine who gets to choose the final arbitrator. Within ninety days of written notice of a claim, the first party may choose their arbitrator. After that arbitrator is chosen, the second party likewise has ninety days to choose their arbitrator. Within ninety days of the second party's notification of the chosen arbitrator, the two arbitrators must meet to choose a third arbitrator. Within ninety days of choosing the third arbitrator, a hearing must be held. The time limits set forth in the Arbitration Agreement allow for several months to pass before the arbitration process even begins. The Arbitration Agreement further provides that twenty-four hours prior to the hearing, each party must submit their demand/offer for settlement. The panel of arbitrators has no discretion to award any amount different from what one of the parties offered.

Daughter filed the Notice of Intent to File Suit on March 25, 2020, and served the Facility on June 9, 2020. The parties engaged in mandatory pre-suit mediation, which was unsuccessful. Daughter filed wrongful death and survival actions on

November 2, 2020, and timely served the Facility. In her Complaint, Daughter alleged because of the Facility's negligence, Ms. Hensley developed a wound near her articulating brace which led to an infection, sepsis, and her ultimate death. The Facility filed a Motion to Compel Arbitration on February 19, 2021. In its order dated April 9, 2021, the circuit court denied the Motion to Compel, finding the arbitration agreement unconscionable. A Motion for Reconsideration was also denied by order dated May 28, 2021. This appeal followed.

## STANDARD OF REVIEW

Unless the parties otherwise provide, the question of the arbitrability of a claim is an issue for judicial determination. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001). Appeal from the denial of a motion to compel arbitration is subject to de novo review. *Chassereau v. Global Sun Pools, Inc.*, 373 S.C. 168, 171, 644 S.E.2d 718, 720 (2007). Also, "[w]hether an arbitration agreement may be enforced against a nonsignatory to the agreement is a matter subject to de novo review by an appellate court." *Wilson v. Willis*, 426 S.C. 326, 335, 827 S.E.2d 167, 172 (2019). "[W]e must honor the factual findings of the circuit court pertinent to its arbitration ruling if those findings are reasonably supported by evidence in the record." *Sanders v. Savannah Highway Auto. Co.*, 440 S.C. 377, 382, 892 S.E.2d 112, 114 (2023).

## LAW/ANALYSIS

### I.    Unconscionability

Appellants argue the circuit court erred in finding the Arbitration Agreement unenforceable because it is unconscionable. We disagree.

Appellants argue there is no evidence supporting a claim of unconscionability because the Arbitration Agreement was not an adhesion contract, signing it was not required to gain admission for Ms. Hensley to White Oak Estates, it contained an opt-out clause that Respondent initialed in addition to signing the Arbitration Agreement, and it foreclosed no type of recovery—it only specified a forum. Additionally, Appellants contend Ms. Hensley was "familiar with what she was doing, given ample notice of what she was being asked to sign, and given the opportunity to reflect on her agreement to arbitrate and rescind it. Still, she executed the Agreements and did not rescind her consent to binding arbitration." Further, Appellants argue unconscionability is speculative because it is not developed in the record; however, the circuit court's order specifically addressed

the unconscionable nature of the Arbitration Agreement. Respondent highlights the circuit court found the circumstances surrounding the presentation of the Arbitration Agreement and the inequities in its terms met South Carolina's two-prong test to declare the contract unconscionable. Appellants did not address this test and instead focused on whether (1) the Arbitration Agreement was an adhesion contract and (2) the Arbitration Agreement's terms were reasonable under federal law.

Under South Carolina law, unconscionability is "the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 24-25, 644 S.E.2d 663, 668 (2007) (*quoting Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 361 S.C. 544, 554, 606 S.E.2d 752, 757 (2004)). The "absence of meaningful choice" element "speaks to the fundamental fairness of the bargaining process." *Id.* The key factors for analysis as to this element include (1) the nature of the injuries suffered by the plaintiff; (2) whether the plaintiff is a substantial business concern; (3) the relative disparity in the parties' bargaining power; (4) the parties' relative sophistication; (5) whether there is an element of surprise in the inclusion of the challenged clause; and (6) the conspicuousness of the arbitration clause. *Id.* (*citing Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 293 (4th Cir. 1989)). "If a court as a matter of law finds any clause of a contract to have been unconscionable at the time it was made, the court may refuse to enforce the unconscionable clause, or so limit its application so as to avoid any unconscionable result." *Id*.

This court recently found an arbitration clause unconscionable and thus unenforceable because the final two sentences of the arbitration clause at issue effectively shortened the statutory period to raise an issue following the party's termination of the overarching agreement. This court found "[e]ven though this provision purports to apply equally to both parties, as a practical matter, it would disproportionately affect the homebuyer's ability to bring a claim. Further, it is not "geared towards achieving an unbiased decision by a neutral decision-maker." *Huskins v. Mungo Homes, LLC*, 439 S.C. 356, 369–70, 887 S.E.2d 534, 541 (Ct. App. 2023), *cert. granted* (Feb. 7, 2024); *See Simpson*, 373 S.C. at 25, 644 S.E.2d at 668. "In analyzing claims of unconscionability in the context of arbitration agreements, the Fourth Circuit has instructed courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." *Simpson*, 373 S.C. at 25, 644 S.E.2d at 668-69 (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)). The *Hooters* decision

struck down an arbitration clause because it incorporated rules so "warped" and void of due process that any arbitration under them would have been a "sham." *Hooters*, 173 F.3d at 940.

The circuit court found the terms of the Arbitration Agreement were unconscionable and therefore unenforceable because (1) Daughter lacked meaningful choice in the terms of the Arbitration Agreement; (2) the terms of the agreement were unfair and no person would voluntarily agree to them; (3) the Arbitration Agreement allowed for substantial delays in the process, thus defeating the purpose of arbitration; and (4) the arbitrators had no discretion to award anything other than one of the offers presented by the parties, resulting in the cost of arbitration far outweighing the cost of proceeding to court.

In its order, the circuit court notes an arbitration agreement employing this strategy is better suited for sophisticated litigation. Each party must submit one final resolution and the arbitrators have no discretion to change the terms. In other words, it is one outcome or the other. Nursing home arbitration agreements differ from high-level arbitration agreements based on the sophistication level of the parties, the ability to consult legal counsel, the deep understanding of the arbitration process, and the large sums of money at the parties' disposal. The circuit court notes employing this strategy in this line of nursing home arbitration agreements creates a significant disparity in bargaining power because nursing homes tend to be sophisticated entities well versed in arbitration, while the residents and representatives have less knowledge and understanding of the process.

As a result of utilizing this arbitration strategy, the non-prevailing party is then required to pay all of the prevailing party's costs and expenses including, but not limited to, the third arbitrator's fees and any other costs associated with the hearing. The circuit court's order notes this results in the cost of arbitration far outweighing the cost of proceeding in court; thus, rendering the agreement unconscionable. The order further highlights, per Daughter's affidavit, Ms. Hensley's Estate had no assets and no income whatsoever. The amount of money it would cost to begin and proceed through the process of arbitration far exceeds what is available to Respondent. The circuit court's order cites to *Fi-Tampa, LLC v. Kelly-Hall*, 135 So.3d 563 (Fla. App. 2014), which explains:

> Although the costs of arbitration may be a basis for determining that an agreement to arbitrate is substantially unconscionable, since *Green Tree* the issue of the prohibitive costs of arbitration has developed into a

separate defense to the enforcement of an arbitration agreement. *See Zephyr Haven*, 122 So.3d at 921–22. "[W]here 'a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.'" *Id*. at 921 (quoting *Green Tree*, 531 U.S. at 92, 121 S.Ct. 513). In determining whether the costs of arbitration in a fee splitting arrangement are so prohibitive as to render the agreement unenforceable because it denies the plaintiff access to the arbitral forum, a case-by-case analysis is appropriate. *Id.* at 922. The focus is on the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigating in court, and whether the cost differential is so substantial as to deter the bringing of the claims. *Id*.

We find the circuit court did not err, and we find the Arbitration Agreement was unconscionable. In its order, the circuit court first asserts the decision to place a loved one in a nursing facility is typically made "in the midst of a crisis brought on by a precipitous deterioration in health status, disability level, or the loss of a caregiver or spouse." Often, because of the unplanned nature of admission and time pressures, families lack the ability to consider alternative options for their loved ones. Here, Daughter signed an affidavit stating she was required to sign the Admission Agreement under stress during her mother's hospitalization, and the Arbitration Agreement was never discussed or explained to her prior to signing. Further, Daughter lacked a meaningful choice in the terms of the Arbitration Agreement, and was not involved in the drafting of the Arbitration Agreement. The Arbitration Agreement sets time limits that allow for extensive delays in the process; this ultimately defeats the purpose of arbitration—to promote efficiency and timeliness that is often not possible when the issues proceed to court.

We agree and adopt the circuit court's finding of unconscionability. We find instructive this court's affirmance in *Doe v. TCSC, LLC*, 430 S.C. 602, 846 S.E.2d 874 (Ct. App. 2020). In *Doe*, this court found the agreement unconscionable for the following reasons:

> [I]t was an adhesion contract [and] it was foisted on Doe "hastily" on a "take it or leave it basis" amidst a transaction by a single consumer with an international

automotive concern. Doe had no counsel and the injuries she alleges are far removed in time and space. These findings of the circuit court are well anchored by the record.

*Id.* at 613, 846 S.E.2d at 879-80.

We likewise find the Arbitration Agreement here was unconscionable and unenforceable. Accordingly, the circuit court did not err in denying the motion to compel arbitration.

## II.    Favorability of Arbitration, Merger, and the Wrongful Death Action as to Defendants White Oak Estates, Inc. and White Oak Manor, Inc.

Because we find the circuit court did not err in denying Appellants' motion to compel arbitration based upon unconscionability, we need not address the additional issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address the remaining issues because its resolution of a prior issue was dispositive).

## CONCLUSION

Based on the foregoing, the circuit court's order is

**AFFIRMED.**[1]

**THOMAS, MCDONALD and VERDIN, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.